# Richmond.

## TYLER, RECEIVER, v. SITES.

### MARCH 8th, 1894.

1. RAILROADS—*Trespassers—Injuries—Deaf mute.*—Persons in charge of a train have the right to assume that one walking on the track will get off before train reaches him ; and the company is not liable for the death of a deaf mute who was walking on the track with his head bent down without looking for a train, and was struck by a train and killed.

2. IDEM—*Opinion—Evidence.*—Question to witness in action for killing one walking on railroad track as to whether there was enough in deceased's appearance to indicate to the engineer that he was in possession of his faculties, *held*, inadmissible as asking for witness' opinion on a fact which it is the province of the jury to determine from the facts testified to.

Error to judgment of circuit court of Rockingham county, rendered April 6, 1893, in an action of trespass on the case wherein V. H. Lam, sheriff of Rockingham county, and as such administrator of Thomas H. Sites, deceased, was plaintiff, and S. F. Tyler, receiver of the Shenandoah Valley Railroad Company, was defendant. There having been a verdict and judgment for the plaintiff for $1,500, the defendant obtained a writ of error. Opinion states the case.

*George E. Sipe* and *W. H. Travers,* for plaintiff in error.

*John E. Roller, O. B. Roller,* and *C. D. Harrison,* for defendant in error.

LEWIS, P., delivered the opinion of the court.

This is the sequel to *Tyler, receiver,* v. *Sites' Adm'r,* 88 Va., 470. The action was brought to recover damages for the alleged negligent killing of the plaintiff's intestate, a deaf mute, while walking on the ends of the cross-ties on the defendant's tracks. The facts, as they were then presented by the record, were fully set forth in the opinion of the court, delivered by Judge Richardson, on the former appeal; and upon those facts it was held that there could be no recovery. The fact, it was said, that the deceased was deaf made it all the more incumbent upon him to keep a lookout for the train; that to all appearances he was in possession of his faculties; and that the servants of the company had the right to assume, up to the last moment, that he would get out of the way in time to avoid injury.

The judgment was accordingly reversed, and the rule declared to be this: That while a railroad company is bound to keep a reasonable lookout for trespassers on its tracks, and to exercise such care as the circumstances require to avoid injuring them, yet that when an adult person is seen walking on the track, in front of an approaching train, apparently in possession of his faculties, the company has the right to presume that he will seasonably remove himself from his dangerous position, and that if he fails to do so, and is injured, the fault is his own, and the company will be held blameless, in the absence of wilful negligence on its part.

In a recent case in the Supreme Court of North Carolina it was held, in conformity with the rule, that whether the engineman saw the plaintiff at a distance of 150 yards or of 10 feet, he was not at fault in acting on the supposition that she would still get out of the way, and that it was immaterial whether the train was moving fast or slow. *High* v. *Railroad,* 112 N. C., 385; citing *McAdoo* v. *Railroad,* 105 N. C., 140; *Meredith* v. *Railroad,* 108 *Id.,* 616; *Norwood* v. *Railroad Co.,* 111 *Id.,* 236.

Many other authorities might be cited to the same effect, but it is needless to do so, as the rule is well established in this

State, and upon sound reason.    *N. & W. R. R. Co.* v. *Harmon's Adm'r*, 83 Va., 553, 577.

In the present case the evidence on the second trial, after the case went back to the circuit court, was substantially the same as on the first, except that the plaintiff sought to prove, on the last trial, by the witnesses, Murray and Whitlock, that the deceased, apparently, was not in possession of his faculties at the time of the accident; and to sustain this theory the following question was asked the witnesses—viz: " Was there enough in the appearance of the deceased to indicate to the engine-man that he was not in possession of his faculties?" To which each answered " Yes."

The defendant objected to this evidence, but the court overruled the objection, and allowed the evidence to go to the jury, to which ruling an exception was taken.

We are of opinion that the objection ought to have been sustained. The general rule is that witnesses must testify to facts, and not to opinions; and, although there are exceptions to the rule, the present case is not within any one of them. The ground, moreover, of the witnesses' opinions is anything but satisfactory. In substance it was that the deceased, when seen by them at a considerable distance, immediately before the accident, was walking with his head and body bent forward. "He had his whole body bent," said one of them, "and his walking in that bent position towards the locomotive, and his not getting out of the way, was the indication that he was not in his right faculties." Another witness, however, for the plaintiff, said " he was walking as he usually walked"; and there is not the faintest intimation that he was ever considered apparently " not in possession of his faculties," except that he was a deaf mute, at any time before the accident.

. The truth is, he was simply walking, as persons usually walk on the ends of the cross-ties of a railroad, with head and body bent forward, and it would have been remarkable if he had appeared to the engine-man in any other position. This

is clearly brought out by one of the plaintiff's own witnesses, who says: " He was bent over with his head down, *like some one stepping on the ends of cross-ties,* and continued so to walk until he was struck." Another witness on the same side testifies that there was nothing peculiar in his gait or manner, and that when he separated from the witness, a few minutes before the accident, he was in a jovial humor.

But if there was anything peculiar in his movements or appearance, the jury were presumably competent to form a correct conclusion on the subject, unaided by the opinions of others. Undoubtedly there are questions upon which non-experts may give their opinions, as, for example, questions of identity, velocity, distance, and the like, because such questions usually depend upon a variety of circumstances which are incapable of being presented with their proper force and significance to any but the observer; and hence this court has held such evidence admissible on the question of insanity, its value depending upon the intelligence of the witnesses, their means of knowledge, and the reasons they give for their opinions. *Cropp* v. *Cropp,* 88 Va., 753. But opinions are never received if all the facts can be ascertained and made intelligible to the jury, or if the matter is such as men in general are capable of comprehending and understanding. 7 Am. & Eng. Ency. of Law, tit. " Expert and Opinion Evidence," p. 493.

This rule applies here; for the question was, not whether the deceased was insane, or bereft of his faculties, but whether there was enough in his appearance to indicate any such infirmity on his part to the engine-man; which was a question for the jury to determine for themselves upon the facts of the case, and not upon the opinions of witnesses. To allow a witness to give his own opinion as to one's mental condition is a very different thing from allowing him to say what, in his opinion, some one else ought to have thought about it.

But if the evidence objected to were admissible, it is obvious from what has been said that it would fall short of proving

what it was intended to prove; so that the record shows now, as it did on the former appeal, that the deceased lost his life by his own folly and recklessness, and that his representative has no recourse for damages against the company.

JUDGMENT REVERSED.