8401

## CARTER v. SOUTHERN RAILWAY.

1. RAILROADS—NEGLIGENCE—ISSUES.—Where a person is seen by the engineer and the fireman on the engine for a thousand yards, when the station signal was given, and he made no effort to get off the track and no effort was made to stop the train or to sound the danger signal until too near to stop the train before striking him, there is evidence of negligence for the jury.

2. IBID.—IBID.—A railroad company owes due care to one walking on a railroad track where the public have acquired a right to travel.

3. CONTRIBUTORY NEGLIGENCE.—Where wantonness and wilfulness are eliminated from a case by consent, the defendant is still required to establish his plea of contributory negligence, and if the evidence shows wilfulness, the plea cannot avail.

4. RAILROADS—TORTS.—In an action against a railroad company and its engineer for a joint and several tort, a verdict against the railroad alone should not be set aside. Here the jury may have thought the engineer could not have seen the man on the track, but that the fireman saw him and did not notify the engineer in time.

5. IBID.—CONTRIBUTORY NEGLIGENCE—ISSUES.—Whether a deaf man, who, when warned of the danger of walking on a railroad track, said he had been brushed by an automobile on the highway and there seemed no place for him to walk, had considered the matter and concluded the railroad track the safer place on which he would be apprised of the approach of a train by the vibration of the track, was guilty of contributory negligence in so walking on the track is for the jury.

MR. JUSTICE WOODS, *with whom concurs* MR. JUSTICE HYDRICK, *dissents, and states the rules governing the reciprocal rights of railroads and persons walking on their tracks.*

Before WATTS, J., Fairfield, September term, 1911. Affirmed.

Action by Mary J. Carter, administratrix of J. T. Carter, against Southern Railway Company and J. H. Herring. Defendant, Railway Company, appeals on the following exceptions:

1. "Because his Honor erred in refusing to grant the motion for a nonsuit, and to direct a verdict in favor of the defendant upon the first ground, which was 'that there is no evidence in the case tending to show any breach of duty owed by the defendant to the plaintiff's intestate, and no evidence of any negligence whatever upon the part of the defendant company that was the proximate cause of his death,' the error being that the undisputed evidence shows that there was no negligence on the part of the defendant company, its servants or agents, that was the proximate cause of the death of plaintiff's intestate.

2. "Because his Honor erred in refusing the motion for a nonsuit, and to direct a verdict upon the second ground urged, which was 'that the undisputed evidence shows that

at the time of his death the deceased was a trespasser upon the track of the defendant company, and there is no evidence of any recklessness, wantonness or wilfulness on the part of the defendant after he was discovered to be on the track that was the proximate cause of his death,' the error being that under the undisputed facts and law applicable thereto the plaintiff's intestate was a trespasser upon the track of the defendant company at the time of his death, and there being no evidence of recklessness, wantonness or wilfulness shown, after he was discovered to be on the track, his Honor, therefore, should have granted the motions for a nonsuit, and for the direction of a verdict.

3. "Because his Honor erred in refusing the motion for a nonsuit, and to direct a verdict upon the third ground, which was 'that there is no evidence that this was a traveled place in the legal sense, and no evidence of negligence in striking the plaintiff at a traveled place, which was the proximate cause of his death,' the error being that the complaint, having alleged that the plaintiff's intestate was walking on the track of the defendant company 'at a traveled place,' and there being no testimony in law to support such allegation, and no evidence of negligence in striking the plaintiff at a 'traveled place,' his Honor should have granted said motions.

4. "Because his Honor erred in refusing the motion for a nonsuit, and to direct a verdict upon the fourth ground, which was 'that if the evidence shows that deceased was a licensee upon the track of the defendant company, then there is no evidence of any negligence on the part of the defendant company, or of any breach of any duty that the defendant owed plaintiff's intestate, if he was a licensee, there being no evidence of any lack of care on the part of the defendant company that was the proximate cause of his death,' the error being that there was no evidence of negligence on the part of the defendant company, its servants and agents, even if the plaintiff's intestate was a licensee,

but as the testimony clearly showed, under the law, that the plaintiff's intestate could not be a licensee upon the track of the defendant company at the point where he was struck and killed; there was absolutely no evidence of any breach of duty that the defendant owed the plaintiff's intestate, as there was no evidence of any lack of care on the part of the defendant company after it discovered plaintiff's intestate on the track.

5. "Because his Honor erred in not granting the motion for a nonsuit, and for direction of a verdict upon the fifth ground, which was 'that the undisputed evidence shows that the deceased was guilty of contributory negligence, which was the proximate cause of his death,' the error being that the undisputed evidence from which no other reasonable inference can be drawn clearly shows that plaintiff's intestate was guilty of contributory negligence as a matter of law.

6. "Because his Honor erred in charging the jury as follows: 'Now, I charge you as a matter of law that if the public generally are permitted by a railroad company to travel on their railroad track openly, notoriously, adversely and continuously for twenty years or more, then that makes them licensees. If the railroad company know that they are using their track and traveling over it, that is the public generally for twenty years or more, openly, notoriously, continuously and adversely, against their claim or against their exclusive right to use it themselves and they acquiesce in that and permit it, and don't order them off and don't prevent their doing it, then the law says the public generally acquires a right or license to travel up and down that road, to use it as a thoroughfare for the purposes of walking on it.'

The Court: "Is the law twenty or ten years?

Mr. McDonald: "For adverse possession? Ten years adverse possession, twenty years presumption of the grant.

The Court: "If the railroad company permits the public generally to use their railroad track for a thoroughfare, people to walk on it, and use it as a passway or anything of that sort, openly, notoriously, adversely and continuously for ten years or more, and they acquiesced in it, and consent to it, or don't raise any row over it, and permit it, if that goes on for ten or more years openly, notoriously, continuously and adversely, then that gives them a permissive right or a license to use the track for that purpose. It doesn't mean that one man can use it for that length of time. It means the public generally who go up and down the railroad track. The jury must be satisfied that the public generally have continuously, openly, notoriously and adversely for ten years or more traveled the road as a matter of right, and not as a matter of permission, and that the railroad has acquiesced in that, or that they had knowledge of it and permitted it. When that is the case, they are called licensees. That is the public generally has a license to walk up and down the railroad track," the error being that neither an individual nor the public by use of a railroad track for any length of time can acquire an adverse use thereof, so as to ripen into a right to its use, either as licensee or otherwise, and it was error in his Honor to hold and charge otherwise.

7. "Because his Honor erred in charging the jury as follows: 'If in this case the railroad company was negligent and careless, that is, if the agents and servants of the company failed to observe due care and due precaution so as not to injure plaintiff's intestate in this case, that is Carter, if Carter was a licensee, that is, the public had acquired a right to walk up and down this railroad track under the law, as I have given it to you, and that carelessness and negligence on their part was the cause of the injury to Carter, and Carter didn't by any act of negligence or carelessness on his part contribute to the direct and proximate cause of his injury, then under circumstances of that sort the

plaintiff would be entitled to recover such actual damages sustained proportionate to the injury sustained,' the error being that plaintiff's intestate could not acquire a right to the use of defendant's track at the point where he was killed by adverse use or otherwise, as a matter of law, and the defendant company, its agents and servants, did not owe to him due care as a licensee, and it was error to charge the jury as above set forth.

8. "Because his Honor erred in charging the jury as follows: 'Now, I charge you further as a matter of law that a railroad company in running its cars over its track has a right to assume in the absence of anything to the contrary, or any proof to the contrary, that when a person is walking on its track and they see or hear the approach of a train, or if they give the necessary signals and everything of that sort, they have a right to assume that the party walking on the track will get off the track and get out of the way of the approaching train.    At the same time, the law requires the engineer, the party in charge of the train, the locomotive running it, to observe due care and due precaution not to inflict injury on any person that is on the track.    They must observe due care and due precaution, exercise the ordinary care, do what an ordinary prudent person would do under similar circumstances not to inflict any injury on any person on the track and gives the necessary signals, and they don't get off, and there is any reasonable way whereby he can stop the train and prevent the injury, and he doesn't observe due care and due precaution, but is careless and negligent, and doesn't observe due care and due precaution and injures any one under circumstances of that sort, and the party injured doesn't by any act of carelessness and negligence on his part in any manner contribute to the direct and proximate cause of his injury, then the party injured or the party suing for him would have a right to recover such actual damages as be sustained proportionate to the injury sustained,' the error being that such charge was confusing to the jury, inasmuch

as his Honor failed to distinguish between the duty owed a licensee and a trespasser, and thus charged the jury that even if, under the facts, the jury should find that plaintiff's intestate was a trespasser, still the defendant company would be liable. if it failed to observe due care and due precaution, or failed to exercise ordinary care, whereas the law is that if he was a trespasser, the mere failure to observe due care or ordinary care would not render the defendant liable.

9. "Because his Honor erred in charging the jury as follows: 'If you think one defendant was careless and negligent, and the other was not, or the agents and servants of the other, was not, then your verdict can be against one of the defendants. You can say, "We find for the plaintiff against the Southern Railway Company so many dollars damages," sign your name as foreman, or "We find against the defendant, Herring," and sign your name as foreman,' the error being that there could be no verdict against the defendant, railway company, unless its codefendant, Herring, was guilty of negligence, and his Honor should have charged the jury that there could be no separate verdict against the defendant, Southern Railway Company, if the jury concluded that defendant, Herring, was not guilty of negligence.

10. "Because his Honor erred in not granting a new trial upon the first ground, which was 'that the evidence in this case shows that plaintiff's intestate was a trespasser upon the railroad track at the time he was killed, as he was not injured at a public crossing, street or traveled way, nor in a populous community, where he had acquired a license to be upon the track, and there is no evidence of wilfulness, wantonness or recklessness on the part of the defendant, its agents and servants,' the error being that the undisputed evidence showed that plaintiff's intestate was a trespasser, and there was no evidence of wilfulness, wantonness or recklessness on the part of the defendant, its agents and servants, that was the proximate cause of his death.

12. "Because his Honor erred in refusing motion for new trial, upon the second ground, which was, 'That even if, under the facts and the law, plaintiff's intestate was a licensee on the track of the defendant company, there is no evidence of any negligence on the part of the defendant company, or any breach of duty that it owed to plaintiff's intestate, as there was no evidence of any lack of ordinary care on the part of the defendant company or its agents, after discovering him on the track, and the positive testimony shows that the station signal was blown, and the danger signals were given in ample time for plaintiff's intestate to have stepped off the track, and the evidence further shows that defendant's agents and servants used every reasonable measure and precaution by applying the emergency brakes to avoid injury to plaintiff's intestate, after discovering him on the track,' the error being that even if plaintiff's intestate was a licensee, there was no evidence of negligence on the part of the defendant company, but, on the contrary, the undisputed evidence showed that every reasonable measure and precaution to prevent injury to plaintiff's intestate was observed by defendant's agents and servants, after discovering him on the track and that he failed to heed the danger signals.

13. "Because his Honor erred in refusing motion for a new trial on the third ground, which was 'that whether plaintiff's intestate be considered a trespasser, or a licensee upon defendant's track, the undisputed testimony shows that he was guilty of contributory negligence, he having gotten upon the track at a time when he knew that defendant's train was about due, knowing that he was deaf, walking with his back towards the coming train and failing to look behind him, or to adopt any other means to discover the approaching train, and such contributory negligence on his part was a proximate cause of his death,' the error being that whether plaintiff's intestate was a trespasser or a licensee upon the track, the undisputed evidence showed that he was guilty of

contributory negligence as a matter of law, and such contributory negligence was the proximate cause of his death."

*Messrs. B. L. Abney* and *McDonald & McDonald,* for appellant. *Messrs. McDonald & McDonald* cite: *Verdict should not stand against one defendant only:* 65 S. C. 332; 67 S. C. 419; 84 S. C. 190; 89 S. C. 408. *Deceased was a trespasser:* 34 S. C. 292, 444; 63 S. C. 46; 86 S. C. 106; 41 S. C. 1; 59 S. C. 433; 64 S. C. 551-7. *He was not a licensee:* 79 S. W. 238; 118 S. W. 348; 61 S. C. 556; 86 S. C. 106. *The public could not acquire the use of the track at the place of the accident:* 67 S. C. 499. *There is no evidence of breach of duty to license:* 2 Thomp. on Neg., secs. 1601, 1736, 1738; 8 S. E. R. 251; 11 Id. 316; 13 Id. 137; 17 Id. 79; 19 Id. 174; 61 Id. 664; 57 S. C. 243. *Deceased was guilty of negligence or contributory negligence:* 2 Thomp. on Neg., sec. 1782; 69 Pac. 582; 9 Am. St. R. 436, 630; 23 Am. St. R. 585; 49 Am. St. R. 321; 10 Am. & Eng. R. R. Cas. (N. S.) 613; 44 Id. 71; 43 Id. 575; 2 White on Per. Ing. on R. R., secs. 1089, 1098; 2 Thomp. on Neg., sec. 1750; 15 A. & E. R. R. Cas. (N. S.) 703; 33 Id. 97; 13 S. E. 978; 33 Cyc. 839-40; 3 S. E. 397; 36 S. E. 117; 61 N. E. 664; 61 S. E. 665; 5 A. & E. Ann. Cas. 77.

*Messrs. A. S. & W. D. Douglass, contra. Mr. W. D. Douglass* cites: *Deceased was a licensee and his going on the track was not negligence:* 90 S. C. 331, 262. *Contributory negligence is for jury in this case:* 90 S. C. 331; 65 S. C. 413; 64 S. C. 499; 57 S. C. 243; 68 S. C. 483; 70 S. C. 183; 86 S. C. 106; 82 S. C. 332. *Use of public of track was not adverse but permissive:* 61 S. C. 556; 68 S. C. 483; 67 S. C. 499; 70 S. C. 183; 90 S. C. 331; 67 S. C. 508; 70 S. C. 183; 90 S. C. 331; 64 S. C. 109. *Both master and servant are liable:* 65 S. C. 341, 332; 68 S. C. 55; 69 S. C. 1; 11 L. R. A. (N. S.) 352.

Opinions in this case were first filed on October 2, 1912, but ordered reargued before a full Bench at the November term.    The case was argued before a full Bench, Mr. E. M. Rucker sitting in place of Mr. Justice Watts, disqualified.

January 8, 1913.    The opinion of the Court was delivered by

MR. JUSTICE FRASER.    This was an action for punitive and actual damages brought by the plaintiff as administratrix, for the wrongful killing of her husband by the defendants.

The defendant, J. H. Herring, was the engineer operating the train that killed the deceased.    The verdict was against the railway company alone, and was for twelve thousand five hundred dollars.    This verdict was reduced to nine thousand dollars by an order of Hon. R. C. Watts and accepted by the plaintiff.    Judgment was entered for nine thousand dollars and costs.    From this judgment the defendant railway appealed on the grounds set out in the exceptions, which will be reported.

It seems that the deceased lived near Blackstock, in Fairfield county, and was going to said town to his business on the morning of the 6th of June, 1910, and walked on the railway track and not on the public highway that adjoined the track.    The deceased had been deaf and dumb, but he had learned to talk, but was still deaf.    The complaint alleged that the deceased was traveling on the track where the public had been accustomed to walk for more than twenty years and the deceased had the right to walk there. The defendant claimed that the deceased was a trespasser, and, being deaf, was guilty of contributory negligence in walking on a railroad track, especially when he ought to have known that the train that killed him was due, and walked in the same direction as the approaching train with his back to it.

The defendant moved for a nonsuit, for the direction of a verdict, and for a new trial, all of which were refused except the partial relief of a new trial *nisi.* The exceptions raise four questions:

I. Was there any evidence to go to the jury on the question of negligence of the defendants?

II. Did the defendants owe to the deceased due care?

III. When the complaint alleged the joint negligence of the two defendants, could judgment be given against one?

IV. Was there indisputable evidence of contributory negligence.

I. Was there any evidence to go to the jury on the question of negligence of the defendants?

There was evidence that the whistle sounded at the whistle post over a thousand feet away, but that the deceased did not get off the track. That from that point the deceased was in full view of those on the engine and it was a question on the nonsuit as to whether they did see him or not. If they did see him, then the question is answered by *Haltiwanger* v. *Railroad Company,* 64 S. C. 23, 41 S. E. 810. "An examination of the 'Case' shows that there was some testimony tending to show that the engineer did see the deceased on the track, and as a person walking on a railroad track in front of an approaching train is always 'in a position of apparent danger,' we think there was, at least, some evidence tending to show that the engineer running the train saw that the deceased was in a position of apparent danger; and, therefore, we are of opinion that there was no error in refusing the motion for a nonsuit upon either of the grounds upon which such motion was based."

The testimony for the defendants shows that as a matter of fact both the engineer and fireman saw him. The testimony further shows that for more than a thousand feet the fireman said nothing to the engineer about it until the engineer had reached for the brake and whistle. He said, "Mr.

Herring blew the whistle before I said anything. He reached up to the whistle. I said, we are going to hit him. Hold it." The conductor said, "About the time the brakes went down, we struck him."

Thus it seems that there was evidence that no effort was made to stop the train or give the danger signal until it was apparent that the deceased would be struck.

Again, the flagman said, "Well, I heard the engineer sound the danger signal, and about the same time felt the brakes go on in emergency and I looked out of the window right quick on the right-hand side and saw the man fly out to one side."

The answer to this question is, there was evidence of negligence.

II. Did the defendant owe the deceased due care?

It is true his Honor erred in charging that the public could acquire a right to travel the road, but the practical question is, when the agents of the defendant saw the deceased in a position of danger, did they owe him and to humanity due care?

This question is answered by *Sanders* v. *Railway*, 90 S. C. 335. "Plaintiff's testimony tended to show that he was struck while walking alongside of defendant's track in a well-beaten path at a place where the general public had been accustomed to walk for many years, without any objection from defendant; that the train which struck him was running backwards, at the rate of from twelve to twenty miles an hour, through a populous section of the city of Charleston at a place where men, women and children were constantly passing and repassing along defendant's right of way and upon and near its tracks; that the train ran upon him from behind, without any signal or warning of its approach being given.

"We think this testimony made out a *prima facie* case for plaintiff. From it the jury might reasonably have inferred that the use of its right of way by the public was known to

and acquiesced in by defendant, and, therefore, that plaintiff was a licensee and entitled to ordinary care on the part of defendant to prevent injury to him; and also, from the frequency of the use by the general public, that defendant should have anticipated the presence of persons on or near its tracks at that place, and should have exercised due care to prevent injury to them. *Jones* v. *Ry.,* 61 S. C. 556, 39 S. E. 758; *Matthews* v. *Ry.,* 67 S. C. 499, 46 S. E. 335; *McKeown* v. *R. Co.,* 68 S. C. 483, 47 S. E. 713; *Goodwin* v. *R. Co.,* 82 S. C. 321, 64 S. E. 242; *Bamberg* v. *R Co.,* 72 S. C. 389, 51 S. E. 988; *Lamb* v. *R. Co.,* 86 S. C. 106, 67 S. E. 958."

The testimony here showed that the railroad track to Blackstock had been used for more than twenty years by pedestrians without objection and a great many people used it. But if the deceased had been a trespasser, then in *Jones* v. *Railway,* 61 S. C. 559, 39 S. E. 758, it is said: "It is the trespasser's duty to lookout for himself and to give the railway company a clear track by getting out of the way. If, however, the servants of the railroad company should discover a trespasser upon the track, and should then fail to use ordinary care under the circumstances to avoid running him down, this would be evidence from which a jury might infer that the injury was the result not of mere inadvertence, but of a conscious failure to observe due care or of wantonness or wilfulness."

It may be said that wantonness and wilfulness had been eliminated from the case. As a foundation for punitive damages, they were eliminated from the case, but the defendant was still required to make out its affirmative defense of contrbutory negligence and if the facts subsequently proven showed wilfulness, the plea could not prevail.

III. When the complaint alleged the joint negligence of the two defendants, could judgment be given against one?

This question is answered by several comparatively recent cases, and the answer is that it can. *Ruddell* v. *Ry.*, 75 S. C. 293-4, 55 S. E. 528. "In the next place, it is insisted the verdict should have been set aside because the fact, that the finding was against the railroad company and not against its agent, who was directly responsible for the digging and proper guarding of the hole, shows that the verdict was due to prejudice or partiality; the evidence of negligence and wantonness being much stronger against him than against the railroad company. There was no error of law in refusing the motion on this ground, because the liability of the railway company and Brinkley, its agents and codefendant, was joint and several. *Schumpert* v. *Railway and Hutchinson,* 65 S. C. 332, 43 S. E. 813; *Gardner* v. *Railway Company and Pierson,* 65 S. C. 341, 43 S. E. 816; *Carson* v. *Railway, Arwood and Miller,* 68 S. C. 55, 46 S. E. 525."

The testimony was not clear as to what the engineer could see on the left of the center of the track. The jury may have thought that the engineer's view was obstructed by the boiler and that the fireman, the agent of the defendant company, who was on the left side of the engine, was at fault in not notifying him of the danger in time.

IV. Was there indisputable evidence of contributory negligence?

The deceased had been warned not to go on the railroad track and his reply "that an automobile had brushed his clothes and it looked as if there was no place for him to walk on the railroad or public road." There was evidence that when his employer desired to attract the attention of the deceased, he stamped the floor and the deceased feeling the vibrations of the floor, gave attention. The deceased seems to have depended on the telephonic message of a coming train transmitted along the railroad irons and perceived through his feet.

The deceased had considered the matter and seemed to have considered the railroad the safer place. He had considered the matter and it was for the jury to say whether his conclusion was negligently formed or was simply an error of judgment.

The judgment of this Court is that the judgment appealed from be affirmed.

MR. CHIEF JUSTICE GARY *and* MR. E. M. RUCKER, ACT-ING ASSOCIATE JUSTICE, *concur.*

MR. JUSTICE WATTS, *disqualified.*

MR. JUSTICE WOODS, *dissenting.* In this action against the Southern Railway Company and J. H. Herring, one of its engineers, the plaintiff, as administratrix, recovered judgment against the defendant railway company on a complaint containing the following allegations attributing the death of J. T. Carter, plaintiff's intestate, to the actionable negligence of the defendants: "That on the morning of the 6th day of June, A. D. 1910, the said J. T. Carter, since deceased, was walking along the track of the said Southern Railway from his home, situate a short distance south of the town of Blackstock, in the State aforesaid, a station on defendant, Southern Railway Company's railroad, on his way to engage in his lawful business in said town, which said track on and along which plaintiff's intestate was walking having been used by the public as a traveled place for twenty years or more last past before said sixth day of June, A. D. 1910, and while said intestate was on said traveled place, as aforesaid, he was negligently, recklessly, wantonly, unexpectedly approached from his rear, he being totally deaf, by one of the defendant, Southern Railway Company's locomotives, operated by the defendant, J. H. Herring, as engineer thereon, drawing a train of cars at a very high rate of speed, and without due and reasonable precaution, and

through the joint and concurrent negligence, recklessness and wantonness of said defendants, as aforesaid, caused said locomotive drawing said train of cars to strike said intestate, and so injured him that he then and there died."

The main question to be decided is whether the Circuit Judge should have granted a nonsuit on the evidence offered by the plaintiff, or should have directed a verdict in favor of defendant at the close of the evidence on both sides, on the grounds: first, that the testimony on behalf of the plaintiff did not tend to prove that Carter's death was due to the negligence of the defendant, but, on the contrary, admitted of no other inference than that the fatality was due solely to his own negligence; and, second, that if the testimony admitted of an inference of negligence against the defendants, it showed conclusively that intestate was guilty of contributory negligence.

Though railroad companies are held to the exercise of great care in running trains through the country at high speed, the established right of railroads to the use of their tracks and the right of the public to require of railroads prompt and efficient service should not be sacrificed or impaired in favor of pedestrians who, for their own convenience, recklessly take the risk of walking the track in the face of obvious danger.

The general rules of reason applied by this Court and by Courts generally may be thus stated:

1. Due care requires that those in charge of such a dangerous instrumentality as a railroad train should keep a lookout ahead; and failure to keep such a lookout may be evidence of negligence, or wilfulness or wantonness according to the circumstances.

2. Persons who used a railroad track as a walkway without a license either express or implied are trespassers, and those in charge of a railroad train owe them no duty except not to injure them wilfully or wantonly. Hence, if the failure to keep a lookout is found to be merely negligence

and not a wanton or wilful disregard of duty, such trespassers cannot complain or avail themselves of the failure.

3. When a railroad servant charged with the duty of keeping a lookout sees a trespasser on the track he may assume that he is aware of the danger and will get off; but if he has reason to infer from appearances that the trespasser has not heard the train, the duty arises to signal him, and failure to signal in such circumstances may be some evidence of wilfulness and wantonness.

4. If by a wanton or wilful disregard of the duty to keep a lookout, the employee in charge of the engine fails to see even a trespasser helpless on the track, or if such employee fails to stop when he observes the trespasser to be helpless, the trespasser is not precluded by his own mere negligence from recovering for the resulting injuries.

5. When the failure to keep a lookout, or to signal, or to observe one helpless on the track, or to stop the train to rescue such helpless person is due to mere negligence, a trespasser who receives injuries cannot recover; but one who is a licensee on the track, either by express permission to use it or by implied acquiescence in its use, may recover for injuries due to mere negligence in the particulars mentioned, unless he has himself been guilty of contributory negligence.

6. A railroad servant in charge of a train discharges his duty when he duly signals even a licensee on the track of the approach of the train, unless from appearances or otherwise he, as a reasonable man, ought to have observed that the person on the track was oblivious of the danger notwithstanding the noise and the signals, or was unable to get off the track.

Taking the testimony of the plaintiff as true, the circumstances of the killing were as follows: the deceased, J. T. Carter, was an intelligent deaf man who had been educated and taught to speak at the Cedar Springs Institute. He was thirty-nine years old and was living with his wife, also deaf, and his children near the line of the Southern Railway,

between the stations Blackstock and Woodward. He was learning bookkeeping at Blackstock and had occasion to go there frequently. There was a public road running parallel with the railroad, but the railroad was used to a large extent by pedestrians as it furnished better walking than the public road. There were several curves in the track. On 6 June, 1910, Carter was walking on the track, going from his home to Blackstock, and was seen by Herring, the engineman of defendant's train, which passed about 7:20 o'clock in the morning, in time to stop the train and go forward and move Carter off, but the whistle had been blown for the station a few hundred yards away and there was nothing to prevent the signal and the noise of the train from being heard, so that it was impossible that a man who could hear would not have heard and known that the train was very near. When within twenty or thirty feet, or some very short distance of Carter, the engineman gave one or more short, warning blasts of the whistle and stopped the train very quickly, but Carter remained on the track and the stop was not quick enough to prevent the engine from striking and killing him. There was no evidence that the train was not equipped with approved air brakes or that the engineman could have stopped it more quickly after he gave the alarm.

I think it by no means clear that there was evidence to go to the jury tending to show that the use of the track, where deceased was walking, was so general, constant, and usual, by the people of a populous community, as to put the railroad company on notice of such use and to require it either to actively forbid it or to treat those who used the track as licensees, with the right to have their probable presence on the track taken into special consideration in the running of trains. On the contrary, it seems to me that the proof shows nothing more than the usual unbidden use of a railroad track by the people of an ordinary country neighborhood, at their own risk,—such a use as imposed no special duty on the railroad company with respect to them. There

were few families living in the vicinity, and what the witnesses said of the use of the track could be said of the use by almost every average community adjacent to a railroad. The doctrine that such an average or ordinary use implies acquiescence or license by the railroad company is without judicial sanction, and has never been announced in this State, as will be seen by the careful distinction made in *Sanders* v. *So. Ry. Co.,* 90 S. C. 331, and the cases therein cited.

But laying aside that question with the assumption that the deceased was entitled to have the defendant exercise ordinary care for his protection from injury while walking on the track, we next inquire was there evidence of the lack of such care? The rule is well established that those in charge of a railroad train may presume that a pedestrian will get off the track after they have given a signal sufficient to put him on notice, and that they need not stop the train for his sake, unless there is notice from appearances or otherwise that the person on the track has not heard the train or is not able to take care of himself. *Smalley* v. *So. Ry.,* 57 S. C. 243, 35 S. E. 489; *Sentell* v. *So. Ry.,* 70 S. C. 183, 49 S. E. 215. In the open country, where there is nothing to prevent the pedestrian from stepping off, even if the railroad has acquiesced in the use of its track by others, surely a licensee under no infirmity can demand nothing more than that he shall have warning of the approach of the train. The authorities are clear on this subject: *Drawdy* v. *R. R.,* 78 S. C. 374, 58 S. E. 980; *Griskell* v. *Ry.,* 81 S. C. 193, 62 S. E. 205; *N. & W. R. R.* v. *Harmons, Admr.,* 83 Va. 553, 8 S. E. 251; *McAdoo* v. *R. R.,* 105 N. C. 140, 11 S. E. 316; *Meredith* v. *R. R.,* 108 N. C. 616, 13 S. E. 137; *High* v. *R. R.,* 112 N. C. 385, 17 S. E. 79; *Tyler* v. *Sites, Admr.,* 90 Va. 539, 19 S. E. 174; *Beach* v. *R. R.* (N. C.) 61 S. E. 664. In this case the station signal had been blown, there was nothing to prevent the hearing of the noise of the train, and the deceased was walking erect with every appear-

ance of ability to make himself safe by leaving the track. There was nothing to put the engineman on notice when he first saw him that he did not hear the station signal or would not leave the track in time.

· But I think there was a question of fact made by the evidence whether the engineer or fireman, having the deceased in sight, should not have inferred from his conduct that he had not heard the signal and was not aware of the approach of the train and should have endeavored to stop the train before it was within twenty or thirty feet of him.

Continuing the assumption that Carter was entitled to ordinary care on the part of those in charge of the railroad company's trains, and assuming further that the engineer and fireman should have taken notice, before they did, that the deceased would not get off the track and that the engineman was negligent in failing to stop his train in time to prevent striking deceased, the evidence offered by the plaintiff proved conclusively that the death of her husband would not have occurred but for his own gross, contributory negligence.    He was entirely destitute of the sense of hearing. As an intelligent man, he certainly knew that he could not expect the employees of the railroad company to know and take account of his infirmity; and in fact it was not known to the engineman or fireman of this train.    The train by which he was killed had been running by his house on the same schedule for several years, and was about on time on this occasion.    Carter had, therefore, the strongest reason to expect that it would come up behind him, and that he would be entirely oblivious of its approach.    He had been expressly warned of the danger of walking on the railroad by one friend, and another had, on a previous occasion, gone to him and got him off the track in time.    The case is altogether different in its facts from *McKeown* v. *R. R.*, 68 S. C. 483, 47 S. E. 713, relied on by the plaintiff's counsel.    In that case, the Court held that there was evidence of wilfulness and wantonness in running the train at night without

lights, and for this reason even if there had been conclusive evidence of contributory negligence, it would not have been available on a motion for a nonsuit. In this case all charges of wilfulness were withdrawn, and as to such charges a nonsuit was granted. On this point then the case stood just as if no charge of wilfulness had been made in the complaint, and the action had been for negligence alone. In such case the issue of wilfulness being entirely absent, the plaintiff could not claim that contributory negligence would not defeat the action. If negligence be imputed to the engineman for failing by a second or two to realize Carter's danger in time to stop the train and avert his death, beyond all doubt contributory negligence must be imputed to Carter when he went on the railroad in reckless disregard of danger which was imminent and obvious. In *Lamb* v. *Southern Ry.,* 86 S. C. 106, 67 S. E. 958, the Court held that a person in full possession of his senses who undertook to walk across a railroad bridge over a river undertook a peril so obvious that he was guilty of contributory negligence.

A deaf man who deliberately chooses to take his course on a railroad track takes a still more obvious peril. His only hope of escape from a train coming up behind is the chance that those in charge of the train may possibly discover his infirmity in time to stop the train and take him off. It would be difficult to mark out a course of conduct more grossly negligent. The Courts have held that it is contributory negligence for a deaf man to take such an obvious risk. *Schexnadrye* v. *R. R.,* 46 La. Ann. 248, 49 Am. St. Rep. 321; *Johnson* v. *L. & N. R. R.,* 91 Ky. 651, 25 S. W. 754; *International G. & G. N. R. R.* v. *Garcia,* 75 Tex. 583, 13 S. W. 223.

In *Central R. R. & B. Co.* v. *Smith,* 78 Ga. 698, 3 S. E. 397, the plaintiff was injured while walking on the railroad track at night by a train running at an excessive rate of speed, but carrying a headlight. Chief Justice Bleckley, in

holding that there could be no recovery, said: "As matter of fact, to walk along the middle of a railroad track between crossings, when it is dark, and without knowing and remembering whether a train is due or not, and without looking out in both directions for trains that may be due, and without listening attentively and anxiously for the roar and rattle of machinery, as well as for the sound of bell or whistle, is gross negligence."

The deceased in this case was still more negligent, for he chose to walk on the track knowing that it was impossible for those in charge of the train to give him warning of its approach. I cannot escape the conclusion that the judgment of the Circuit Court should be reversed, and that a nonsuit should have been granted.

It seems to me that there were other errors in the charge also in failing to distinguish between the duties owed by the railroad to a trespasser and a licensee, and in giving the instruction that the public might acquire a right to use the railroad as a footpath by its continuous use for ten years, but I do not think further discussion necessary. *Matthews* v. *Ry.,* 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286.

The position that a verdict against the railroad company and not against the engineman is contradictory is unsound and is disposed of by the case of *Ruddell* v. *Ry.,* 75 S. C. 290, 55 S. E. 528, and the cases there cited.

I think there should be a reversal.

MR. JUSTICE HYDRICK *concurs.*