8930

DIX, AS ADMX., v. ATLANTIC COAST LINE R. R. CO.

(82 S. E. 798.)

RAILROADS.  NEGLIGENCE.  CONTRIBUTORY NEGLIGENCE.  NONSUIT.

1. The running backwards of the train by which decedent was struck and killed was not negligence *per se*, where it was run at a reasonable speed and a lookout was kept on the front car, who was able to signal the engineer.

2. That the engineer of a train running backwards could not see the track ahead of the train when decedent was struck and killed was not negligence, where the conductor had stationed himself on the forward car to keep a lookout and signal the engineer of approaching danger.

3. Where, at the time a railroad conductor standing on the front car of a train running backwards, discovered decedent on the track, there was nothing to indicate that decedent was not in the possession of all his senses, the conductor was entitled to assume that he was and would get out of the way.

4. Where decedent, a water carrier employed by a railroad construction contractor, with knowledge that he was too deaf to hear an approaching train, went on the track in front of a train, running backwards, in plain sight, and was struck and killed, though attempts were made by persons on the end of the train to warn him to get out of the way, he was guilty of contributory negligence, and no recovery could be had for his death.

Before C. J. RAMAGE, special Judge, Monk's Corner, November, 1913.  Reversed.

Action by Katie Dix, as administratrix of the estate of Peter Maxwell, against Atlantic Coast Line Railroad Company.  The facts are stated in the opinion.  From a judgment for plaintiff, the defendant appeals.

*Messrs. Mordecai, Gadsden & Rutledge, Simeon Hyde* and *Octavus Cohen,* for appellant, submit: *Deceased assumed the risk of his employment, and such assumption need not be plead affirmatively:* 22 S. C. 557; 70 S. C. 470; 72 S. C. 237; 77 S. C. 328; 84 S. C. 283; 41 S. C. 388. *He chose the obviously unsafe way:* 61 S. C. 489; 81 S. C.

530; 82 S. C. 542; 84 S. C. 364; 85 S. C. 363; 89 S. C. 502;
72 S. C. 97; 86 S. C. 69; 55 S. C. 483; 80 S. C. 232.

*Messrs. W. A. Holman* and *E. J. Dennis,* for respondent.

September 2, 1914.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This appeal is from a judgment against defendant for $1,000 damages for the wrongful killing of Peter Maxwell, who was twenty-nine years old, and was employed as a water carrier for a construction force, engaged in double tracking defendant's road.

Following is the substance of the testimony which is pertinent to the issues:

For plaintiff: W. A. Smoak—Was engineer of a work train, consisting of nine flat cars, loaded with steel rails, which were being pushed backwards on the main line, at a speed of from fifteen to eighteen miles an hour, past the place where the construction force was at work; was on the right-hand side of the engine, going north; deceased came on the track from the left; there were twenty-five or thirty negroes on the cars—some sitting and some standing—and he could not see deceased, though he was looking ahead, but his view was not obstructed over the end of the cars, or to his right; did not see deceased, until his engine passed him where he was lying on the side of the track; the construction company had a train which was being constantly run back and forth hauling earth, and there were other trains constantly passing; this was known to all concerned; there was a path about two feet wide alongside the track, in which deceased could have walked with safety, and it was a better place to walk than on the track.

For defendant: S. E. Dickson—Was conductor of the train, on the forward car, looking ahead; first saw deceased

about 250 to 300 feet ahead of the train; he was then on the new track, talking to the foreman; he walked across and got on the main line, and walked about the length of a rail, and then turned, quartering from the way they were going, so that he thought deceased was going to get off the track; he turned his head, as though he saw the train, and was going to get off the track, but did not do so, and, as soon as he concluded that deceased had not seen the train, he began shouting at him and waving the engineer to stop, who responded to the signal by putting on the airbrakes; the engineer could have seen deceased, if he had been permanently on that side of the track, but he was on that side only six or eight seconds before he was struck; no warning signal was given, at that time, other than the shouting at deceased, though the crossing signal—four blasts of the whistle—had been given three hundred feet further back; did not think it would have been possible for the engineer to have stopped the train in time to prevent the accident, after deceased came on the track, even if he had seen him.

M. M. Worthington, engineer of construction work—Was riding on front car with conductor; saw deceased on the track about four car lengths ahead; as he did not get off, yelled at him, and, when train was five or ten feet from him, screamed at him as loud as he could, but deceased did not get off, and was struck by the end of the car.

A. H. Haxston, assistant engineer of construction work—Was on front car; heard a lot of shouting; looked up and saw deceased forty or fifty feet ahead, walking along the end of the crossties; the conductor had his arms out—the stop signal—and witness felt the airbrakes go on; deceased did not appear to hear the shouting, or the noise of the train; there was a path alongside the track in which deceased could not have been hurt; crossing signal had been blown 400 or 500 feet from where deceased was struck.

Hyman Brenner—Knew deceased for past eight to twelve years; he was hard of hearing; talking face to face, he

would know what you were saying, but let him turn his head, and from five to ten feet off, he could not hear anything; think he could have heard a train blow, if is was very near.

The Court below was requested to direct a verdict for defendant, on the ground that there was no evidence of negligence on the part of defendant, and, if so, that deceased was guilty of contributory negligence, and assumed the risk of injury in walking upon the track.

The motion should have been granted. There was no evidence that defendant's track was used as a walkway at the point where deceased was killed, either by the construction force or others, so as to charge defendant with notice that it might expect to find persons on or near the track; but, assuming that the fact that construction work was going on at that place imposed upon defendant the duty of exercising care commensurate with the knowledge that it might expect to find persons on or near the track, there is no evidence from which it can be inferred that such care was not observed. The fact that a train is run backwards is not, *per se,* evidence of negligence, if it is done at a reasonable speed, under the circumstances, and a proper lookout is kept, because it is often necessary to do so. There is neither allegation nor proof that the speed was unreasonably fast or that a proper lookout was not kept, as in *Sanders* v. *Ry.,* 90 S. C. 331, 73 S. E. 356, and *Dimery* v. *R. Co.,* 92 S. C. 169, 75 S. E. 399. Nor can anything be made of the fact, if it be a fact, that the engineer could not see the track ahead of the backing train, because the possibility of his being unable to do so was provided against in having the conductor on the forward car to keep a lookout, and signal him of approaching danger, which was done, and the signal was promptly responded to by the application of the airbrakes.

The only allegation of negligence is that the train was being run backwards, and that the view of the engineer was

obstructed, so that he could not see the track in front of the moving train; but if by possibility this allegation may be regarded as sufficient to sustain a recovery on the ground that the conductor was negligent in failing to give the signal more promptly, let us examine that aspect of the evidence. When he first saw deceased, there was nothing to indicate to him that he was not in possession of all his senses. He had the right to assume that he was, and that he would get out of the way, and it appeared to him that he was going to do so. In *Cable Piano Co.* v. *Ry.,* 94 S. C. 143, 77 S. E. 868, the Court said: "As there was nothing to indicate that the driver of the team was not in possession of his faculties, the engineer had a right to assume that he would exercise them, and not drive upon the track in front of the approaching train." The conductor gave the stop signal and did all that he could to warn deceased of his peril, as soon as he discovered that he had not seen or heard the train. There is, therefore, nothing in the evidence to warrant the inference that the conductor was guilty of negligence.

It remains to inquire whether deceased was guilty of negligence in walking upon the track, knowing that he was so deaf that he could not hear an approaching train, without even taking the precaution to look; for, if he had looked, he could have seen the train. In *Cable Piano Co.* v. *Ry., supra,* the Court said: "The law imposes upon every capable person the duty of observing due care for his own safety, when about to cross a railroad track, which necessarily involves the exercise of his senses." The conclusion is inevitable that deceased's own negligence was the cause of his death; and that, even if the evidence warrants an inference of negligence on the part of defendant, he was guilty of contributory negligence, which bars a recovery.

This case is easily distinguished from that of *Carter* v. *Ry.,* 93 S. C. 329, 75 S. E. 952, which is similar in some of its features. In that case, Carter was seen on the track a

thousand feet away, and though the crossing signal was sounded at that distance from where he was seen, and it was apparent to those in charge of the train that he continued to walk on the track and did not appear to be conscious of the approach of the train, no other warning was given of the approach of the train, or attempt made to prevent the accident until it was apparent that deceased was going to be struck, when it was too late. In this case, warning, by the shouts of the conductor and others on the train, was given in time for deceased to get off the track, if he had been able to hear it, and the warning was given as soon as the conductor discovered that he had not seen or heard the train. Moreover, in the Carter case, the majority of the Court thought that the evidence warranted the finding that defendant was guilty of wilfulness and wantonness, which was sufficient to prevent the contributory negligence of deceased, if he was guilty of contributory negligence, from barring a recovery, while, in this case, there is nothing in the evidence to warrant an inference of recklessness, wilfulness or wantonness on the part of defendant.

Judgment reversed.

MR. JUSTICE FRASER, *concurring.* I concur in the result on the ground that there is no evidence of negligence on the part of defendant.