BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.

16399

TAYLOR v. ATLANTIC COAST LINE R. CO. *ET AL.*

(60 S. E. (2d) 889)

436

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Appellant,*

*Messrs. J. C. Long, Arthur Rittenberg* and *Brantly Seymour,* all of Charleston, *for Respondent,*

August 24, 1950.

STUKES, Justice.

Respondent was seriously and permanently injured when his automobile which he was driving was in collision with the front end of a Diesel locomotive of a passenger train at about sunset on February 3, 1945, in the North Charleston area where the paved Liberty Hill road crosses at grade the main line, double track, of appellant railroad. The action against appellant and the engineer and conductor of the train was upon complaint which contained appropriate allegations for the recovery of actual and punitive damages upon specifications of negligence which included excessive speed, failure to give the statutory crossing signals or other warning, failure to keep a proper lookout and to provide automatic signal light, flagman or watchman at the crossing, and the maintenance of obstructions to the view of highway travelers. The answer denied negligence, etc., and set up the affirmative defense of contributory negligence, recklessness and wilfulness. At the conclusion of the evidence upon trial the conductor was eliminated as a defendant by consent.

Motions of appellant for nonsuit, directed verdict, new trial and judgment *non obstante veredicto* were refused. The verdict was for $20,000.00 actual damages against appellant alone from which it may be fairly inferred that the jury found only simple negligence and exonerated the engineer-defendant of all alleged delicts. Thus the appeal must be considered in the light of the facts that the engineer ran the train at reasonable speed, kept a proper lookout and gave the highway crossing signals pursuant to statute, Code, secs. 8355, 8377, and these conclusions are supported by the evidence which has been carefully reviewed.

The able and conscientious trial judge was of opinion that the issue of the alleged negligence of appellant was for the jury with respect to its failure to provide crossing lights,

signals, other devices or a flagman at the crossing and negligent lookout by crewman other than the engineer; and that whether respondent was guilty of contributory negligence was also for the jury. We agree with his conclusion that the case is not controlled by the rule applied in *Carter v. A. C. L. Railroad Co.*, 194 S. C. 494, 10 S. E. (2d) 17, because respondent's case was not entirely dependent upon negligence of the engineer, under the allegations and evidence, and that the jury may have found negligence on the part of appellant through other agents, in the failure to keep a proper lookout or provide additional safeguards in contemplation of the obstruction to respondent's view of the crossing. In this feature the case is similar to *Carter v. Southern Ry.*, 93 S. C. 329, 75 S. E. 952; *Rhodes v. Southern R. Co.*, 139 S. C. 139, 137 S. E. 434; *Leppard v. Southern R. Co.*, 174 S. C. 237, 177 S. E. 129; and *Padgett v. Southern Ry. Co.*, 216 S. C. 487, 58 S. E. (2d) 895. However, after most careful consideration we conclude that the evidence is reasonably susceptible only of the inference that respondent was contributorily negligent, which was a defense to the simple negligence of appellant which was found by the jury, and that judgment notwithstanding the verdict should have been entered for appellant. Advertence to the evidence will show the propriety of the conclusion.

Since the verdict for the engineer, respondent's case is principally pitched upon the presence on the railroad right-of-way of a large liveoak tree to his right as he approached the crossing which partially obstructed his view, had he looked, of the train approaching also from his right. Maps in evidence, the accuracy of which is undisputed, show that the thirty-inch trunk of the tree was 79 feet from the center of the highway and 59 feet from the near rail of the second track. Its limb-spread was 50 feet in diameter and the outer edge of the limbs, toward the railroad, was 21 feet from the near rail of the first track. Thus when respondent reached a point 21 feet from the first rail of the near track, the tree had no effect upon his view of the ap-

proaching train, which was then unobstructed for a distance of about a half mile up the track, which was straight and practically level for this distance, to an overhead highway bridge, called the viaduct. Moreover, the first or near rail of the second track, on which the collision occurred, was 13 feet beyond the first rail of the near track, so there was a distance of 34 feet in which respondent may have seen the approaching train for the whole distance of half a mile. Back of this 34 feet, before he got to that point, respondent could of course have seen the train, had he looked, for distances up the track proportionately less than the half-mile. The crossing intersection was not quite at right angles and the larger angle was at respondent's right, between him and the approaching train, which substantially expanded his available field of clear vision above that indicated by the foregoing figures. Furthermore, an earth road ran parallel to the track, between it and the trunk of the tree, and vehicles, including trucks, safely passed under the branches. The distance between the ground and the lowest branches was variously estimated by the witnesses at from six to ten feet; a map in evidence shows ten feet. The train consisted of two Diesel motive units and eleven cars, aggregating in length about 1000 feet, so it must have been easily visible in the existing daylight. It was traveling about forty miles per hour. Implicit in the verdict is the fact that the statutory crossing signals were being continuously given. Nothing in the evidence excuses respondent's failure to hear them. On the contrary, it is not disputed that he was in full possession of his faculties.

He was returning to his nearby home from bird-hunting and was alone in the car save for his dog and kill. As he approached the tracks he passed unheeded, 448 feet away, a highway department warning sign of the railroad crossing and at it was the usual, large cross-arm signal which was maintained by appellant in accord with statute. Code sec. 8356. He inferentially admitted in his testimony that he saw neither of the warning signs and said that he did

not know he was approaching a railroad track, that he was following another car and slowed when it slowed; then, somewhat led in examination, he said that he knew he was coming to a railroad crossing, that he looked to left and right but saw nothing until, quoting from his testimony, "all of a sudden something like a mountain blew up in my face." Quoting further, from cross-examination:

"Q. You didn't know you were coming to a railroad crossing? A. No, sir.

"Q. Why did you look to the left and right? A. I saw the man ahead check up.

"Q. You knew then that you were coming to a railroad crossing? A. Yes, sir.

"Q. And if you had seen anything there, you could have stopped? A. Yes, sir."

The evidence tends to show that the train crew were likewise negligent in the matter of keeping a lookout. The fireman was not in his seat whence he could have seen, if vigilant, the approach of respondent's automobile which was on his side of the locomotive. Instead there sat in his place a temporary member of the crew described as "electrical supervisor" of the railroad who testified that he was keeping a lookout but saw respondent only an instant before the impact and saw nothing of the automobile's approach. Similarly, in view of the presence on the railroad right-of-way of the large liveoak with low-hanging branches and the other circumstances of the crossing, including the heavy highway traffic over it, the jury may have been warranted in finding that appellant should have maintained special warning devices or stationed a flagman at the crossing; and it is apparent that some such consideration occasioned the verdict for actual damages, simple negligence, against appellant; but in our judgment there was no room for reasonable inference other than that respondent was also guilty of negligence in his total failure to make prudent use of his senses of sight and hearing as he approached the crossing, which contributed to

his injury as a proximate cause. The physical facts of the crossing, fully demonstrated by the maps, measurements and photographs in evidence, leave no doubt of the soundness of the conclusion. It is inevitable under all of the facts in evidence.

It is elementary that a railroad company and a highway traveler have correlative duties which require both to exercise at least average care and prudence in such cases and when the evidence is susceptible of only one reasonable inference with respect to a controlling issue, it becomes a matter of law for decision without reference to the jury. *Bishop v. Atlantic Coast Line R. Co.*, 213 S. C. 125, 48 S. E. (2d) 620, and *Arnold v. Charleston & Western Carolina R. Co.*, 213 S. E. 413, 49 S. E. (2d) 725 (both opinions), and the numerous earlier, apposite decisions there cited.

Reversed and remanded for entry of judgment for appellant.

FISHBURNE and OXNER, JJ., concur.

BAKER, C. J., and TAYLOR, J., concur in result.