16558

MOZINGO v. ATLANTIC COAST LINE R. CO.
(67 S. E. (2d) 516)

*Mr. James P. Mozingo, III,* of Darlington, *for Appellant,*

324

*Messrs. Paulling & James,* of Darlington, and *W. Stokes Houck,* of Florence, *for Respondent,*

November 8, 1951.

BAKER, Chief Justice.

This was an action brought to recover damages for injuries to the person and property of the appellant sustained in a collision between a Panel Truck owned and driven by him, and one of the respondent's box cars at a crossing in the city limits of Hartsville, in the County of Darlington, at about 7:15 on the night of October 20, 1948. The appellant, while operating his truck on U. S. Highway No. 15-A, ran into a box car of the respondent which was on a spur track of the respondent leading into the premises of Enterprise Lumber Company, which track crosses said highway at that point. The box car had been spotted on the siding or spur track on the premises of the lumber company some distance from the highway, but after the locomotive and train crew of the respondent had left, it drifted onto the highway, about the center thereof, and there remained about 30 minutes before the appellant drove his truck into and against it.

To the naked eye, this spur track extending into the premises of said lumber company appeared to be level, and in spotting cars thereon, it was not customary to set the brakes on a spotted car, but the train crew would place a chock under the wheels of the car to guard against its rolling back on the highway, which was done in this instance. However, for some unknown reason this car, despite the chocking of the wheels, rolled over the chock and back onto the highway, which was the first box car that had ever rolled back, although many box cars had been theretofore placed on this spur track on the premises of this lumber company and chocked just as was this car. The box car had both doors closed.

The complaint alleged that the appellant's injuries were caused by the negligent, willful and wanton acts of the respondent. The answer of the respondent denied negligent, willful, or wanton conduct on its part, and set up the defense of contributory negligence and contributory willfullness on the part of the appellant.

The case was tried before Honorable Steve C. Griffith as the presiding Judge, and a jury, on September 20th and 21st, 1950. At the close of all the testimony, the respondent made a motion for a direction of verdict in its behalf, which motion was refused, and the case submitted to the jury, who returned a verdict for the appellant (plaintiff) in the amount of $2,300.00, actual damages. The respondent then made a motion for judgment notwithstanding the verdict of the jury, or for a new trial in the alternative.

The only ground of this motion pertinent to the issue here, and which is the same as one of the grounds upon which respondent moved for a direction of verdict, is as follows: "That the evidence conclusively establishes that plaintiff attempted to cross the defendant company's track without exercising any care for his own safety or the safety of his truck (automobile) and that such conduct on his part constituted negligence, gross and willful negligence, recklessness, willfullness and wantonness, and contributed to the injuries

complained of, as a proximate cause, without which they would not have occurred, and that the trial judge erred in not so holding."

The trial Judge, in a carefully prepared order, granted respondent's motion for judgment notwithstanding the verdict of the jury, and on the ground that the appellant's contributory negligence precluded him from recovering a verdict against the respondent. It is from such order that the appeal comes to this Court, and on the sole exception that the trial Judge erred in granting respondent's motion, "the error being that more than one reasonable inference can be drawn from the evidence, and hence his Honor was in error in holding that as a matter of law the plaintiff was guilty of contributory negligence."

The issue raised by the appeal requires that we briefly state the conditions and circumstances prevailing at and shortly prior to the time the appellant collided with the box car of the respondent. (It is of course conceded that the respondent was negligent in permitting the box car to be on the highway obstructing passage of vehicles thereover. It is further conceded that Highway 15-A is a much traveled highway, being one of the main arteries from the North to the South.)

When the employees of Enterprise Lumber Company learned that the box car of the respondent which had been placed by its warehouse door had rolled back onto the highway, they immediately undertook to protect the traveling public against the danger of a collision. They dug a hole in the dirt opposite the west end of the box car between the rails of the track extending over on the premises of the lumber company, poured about eight quarts of kerosene therein, and with croker sacks placed thereon and therein, lighted the sacks and kerosene, which made a fire which reached up four feet or more, and made the box car visible to the occupants of vehicles approaching; stationed flagmen to the north and south of the crossing to further warn ap-

proaching traffic, but we are interested here in only the warnings to the south of the crossing, the side from which the appellant approached the crossing. In addition to the large fire built to the west of the box car, a flambeau made from kerosene soaked croker sacks and put in a water bucket, placed in the center of the highway 240 feet from the crossing, was burning, and a colored man stood in the road at that point waving a white towel when traffic approached from the South. In addition to this warning, Mr. Lawrence Anthony stood in the highway 33 steps or between 80 and 90 feet south of the crossing waving a flash light as traffic approached, and Mr. Roy Windham stood in the highway between where Mr. Anthony was standing and the crossing, waving a flash light. Prior to the time that the appellant collided with the box car, a minimum of fifty automobiles and trucks, 40 per cent. of which approached from the south side, had been successfully stopped or slowed down, and guided around the west end of the box car without mishap. There were others at the scene who assisted in the guiding of automobiles, trucks and other vehicles around the car, among whom were Mr. H. T. Hopkins and Mr. C. T. Jordan.

The highway was straight for a distance of 600 feet south of the crossing and at the time the appellant was approaching the crossing there was no other traffic on this stretch of the highway, either coming or going; and there was nothing to prevent the appellant from seeing the warnings given. The appellant was familiar with this crossing which he frequently used, and the weather was clear, vision being obscured only by the natural darkness of night.

The speed at which appellant was driving as he approached the crossing and until within 54 feet thereof was estimated at 50 miles per hour by three substantial white witnesses for the respondent. One witness, Mr. Anthony (who was standing in the highway waving a flash light 80 or 90 feet from the crossing), testified that the truck which the appellant was driving did not slow up as it passed the bucket containing

the burning flambeau 240 feet from the crossing, and that as the truck approached him he flagged it by waving his flash light just as long as he could stay on the highway without getting hit, and then as he expressed it, he literally dived out of the way of the truck, and at that time the truck was being driven at "something like 50 miles an hour."

The appellant was his only witness. He testified that as he knew he was in the city limits of Hartsville, and having dimmed his lights some distance out for a car he was meeting, he kept them on dim and slowed down his speed to 30 or 35 miles an hour, and that this was the speed at which he was driving when he approached the crossing; that he did not see a flambeau in the highway, and did not see anyone on the highway trying to stop him; that he did not see the box car on the crossing until he was "right into it." (He also testified that he didn't see the box car until he hit it); that he applied his brakes before hitting the box car; that he was not going 30 miles an hour when he collided with the box car; that by applying the brakes he could stop the panel truck he was driving, within 50 feet at a speed of 30 miles per hour; that it showed on the pavement for several days where he applied his brakes before the collision.

It is undisputed that the wheels on the truck dragged upon the application of the brakes, for a distance of 54 feet before the truck hit the box car, and with considerable force.

It will be noticed that following the collision, appellant was carried to Byerly Hospital at 7:20 on the same night, where he was examined by Dr. Barney F. Timmons, who could find no evidence of any injury, but who had the appellant hospitalized for observation "as he was intoxicated and it was difficult to evaluate his complaints." On October 25, the fifth day thereafter, Dr. Timmons again examined appellant and could find no evidence of any injuries. However, the appellant denied that he had been drinking intoxicants either before or after the collision, and of course if the case had depended on this issue alone, it would have been proper for a jury to pass upon it.

At no place in his testimony does the appellant deny that the warnings which were heeded by all others using that highway that night were not given. He simply says he didn't see any lights nor anyone in the highway trying to flag him to slow down and stop. He says his lights were on dim, which prevented him from seeing the box car, although he further says that these dim lights reflected in front "a good long ways"; "they were good lights"; and that he had no trouble seeing with his lights even though he had them on dim.

As is stated in respondent's brief, despite the exacting duties imposed upon railroads in relation to public crossings, it has been definitely and often decided by this Court that a traveler upon the highway cannot be totally oblivious of his surroundings and wholly unconcerned as to his own safety upon approaching a railroad crossing and place the entire responsibility upon the railroad. The traveler has duties imposed upon him, and if he fails in the performance of these duties and such failure results in injury, he is left without a remedy.

In *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742, damages were sought for injuries alleged to have been received in a collision at night between an automobile in which the plaintiff was riding and an unlighted car of a stationary passenger train on the railroad track of the defendant company crossing U. S. Highway No. 1 in the Town of McBee, South Carolina, which train completely blocked the crossing. There was nothing to obstruct the view of the driver of the automobile from the point where he entered upon said highway to the crossing, a block or a block and one-half away. No flagman or other attendant with a light was stationed at the crossing to give warning to travelers on the highway that the crossing was blocked, nor was there any other signal or device provided to give notice of the presence of the train on the crossing. An electric light with a lighting capacity of 200 or 250 watts, maintained by the Town of McBee, was suspended overhead about the center of the highway on the

east side of the crossing, the direction from which the car approached the crossing. The driver of the automobile knew that he was approaching a railroad track, and was driving at a speed of only about 20 miles an hour. When he reached a point about 150 feet from the crossing he testified that he was blinded by lights from an automobile on the opposite side of the track, but that he proceeded on the highway with slower speed until he collided with the train car across the highway, which he never did see until the automobile which he was driving hit the car blocking the crossing. In fact, as stated by him, the presence of the blocking car was made known to him, not from any sight he had of it, but only from the fact that the impact of the collision knocked the radiator cap off the automobile.

On the above stated facts in the *Funderburk case,* the Court held that the driver of the automobile was guilty of gross contributory negligence as a matter of law.

The case of *Brown v. Powell,* 198 S. C. 403, 18 S. E. (2d) 212, 214, was brought for the recovery of damages alleged to have been sustained as the result of the destruction of an automobile which collided with a train of box cars standing motionless on a highway-railroad crossing near the Town of Centenary, South Carolina. During the progress of the trial, motions for nonsuit and a direction of verdict were made and refused. The jury found a verdict for the plaintiff for both actual and punitive damages, and a motion for a new trial was refused. Upon appeal this Court held that it was error for the trial Judge to have refused the motions for nonsuit and direction of verdict.

We quote from the opinion in *Brown v. Powell, supra:*

"* * * The uncontradicted testimony shows that the appellants had stopped its train of cars upon its tracks in such a manner that a much traveled highway was blocked, and permitted so to remain for some length of time; that there were no lights placed upon the train of cars; that there were no flagmen, or other employee, placed at the crossing to warn

those traveling upon the highway; that it was about eight o'clock at night; that the weather was clear, but the night was dark; that there were no means whatsoever used to warn the public using the highway that the crossing was blocked by appellants' train of cars. This testimony, standing alone, without considering the conduct of respondent's intestate while approaching the railroad crossing, would have required the trial judge to submit the case to the jury on the questions of both actual and punitive damages.

"We next turn to the evidence to see what was the conduct of the respondent's intestate as he approached the railroad crossing in question in his automobile.

"The evidence shows that the respondent's intestate was familiar with the crossing in question, having traversed it often going to and from his home, situated about three or four miles from the scene of the collision. On the occasion in question he was accompanied by one Gibson, who survived the wreck. The witnesses for respondent estimated that the intestate approached the crossing driving his car at a rate of speed variously estimated to have been between thirty and fifty-five miles per hour. Jack Gasque, one of respondent's witnesses, testified that upon seeing appellants' train of cars blocking the crossing, he stopped his car on the right-hand side of the highway approaching the crossing, some fifty to sixty feet from the crossing, and then remained there for some time awaiting the train to clear the crossing; that while he was so situated respondent's intestate approached him from the rear, driving his car at a rate of speed estimated to have been between fifty and fifty-five miles per hour; that respondent's intestate suddenly cut his car to the left of that of the witness, passed the witness, and then cut his car sharply to the right; that the deceased's car struck the train of cars of appellants, which then had the crossing completely blocked, and that respondent's intestate collided at an angle with one of appellants' cars.

"Gibson, a witness for respondent, and who was riding with respondent's intestate at the time of the collision, testi-

fied that he did not see the car of Gasque parked on the highway, nor did he see the train of cars across the highway; that respondent's intestate was driving at a speed estimated to be between thirty to fifty-five miles per hour at the time of the collision with the train of appellants. Every witness of respondent, some six in number, who was at the scene of the collision when it occurred, with the exception of Gibson, testified that they had no difficulty in seeing the appellants' train of cars blocking the highway in ample time to stop their automobiles at distances varying from five hundred feet to about twenty feet from the crossing. In addition to these witnesses the appellants called to testify what appears to be the only other remaining witness who was at the scene of the collision when it occurred. This witness' testimony was to the effect that she was occupying the automobile with Gasque; that she saw the train of cars blocking the crossing; that her companion was able to stop his car without any difficulty the distance of about the length of two automobiles from the crossing.

"Construing the testimony in the most favorable light to the respondent, there can be but one reasonable inference to be drawn from the testimony, and that is that if respondent's intestate had exercised the slightest degree of care he could have, and would have, seen appellants' train of cars blocking the crossing in ample time to have avoided the collision.

"Conceding that the facts show the night to have been dark; that the train of cars of appellants was unlighted; that the highway was completely blocked by appellants' train of cars; that no means were used to warn those approaching the crossing that it had been blocked by appellants' train of cars, still these facts would not entitle respondent to recover if her intestate was guilty of gross contributory negligence and recklessness. *Wannamaker v. Southern Railway Co.*, 191 S. C. 86, 3 S. E. (2d) 811; *Smith v. Southern Railway-Carolina Division*, 193 S. C. 44, 7 S. E. (2d) 630; *Breeden v. Rockingham Railroad Co.*, 193 S. C. 220, 8 S. E. (2d)

366; *Carter v. Atlantic Coast Line Ry. Co.,* 194 S. C. 494, 10 S. E. (2d) 17.

"From the respondent's testimony alone the conclusion is inescapable that her intestate was, as a matter of law, guilty of gross contributory negligence, and contributory willfullness, wantonness or recklessness, and that such gross negligence, willfullness, wantonness or recklessness contributed as the proximate cause to the collision and resulting damage to the automobile of respondent's intestate. This conclusion is strengthened by the testimony of appellants' witnesses. * * *"

The specifications of negligence, carelessness, recklessness, willfullness and wantonness alleged in the complaint which are pertinent to the issue raised by this appeal are:

"In failing to erect and maintain at said crossing proper, adequate and sufficient warning signals and devices to warn the traveling public and particularly plaintiff that the crossing was blocked by a freight car.

"In not flagging said crossing at the time in question.

"In not using any lights or other reasonable means to notify the traveling public and particularly plaintiff that the crossing was blocked by the freight car."

And the appellant's sole exception reads:

"That his Honor erred in granting defendant's motion for judgment notwithstanding the verdict of the jury, the error being that more than one reasonable inference can be drawn from the evidence, and hence his Honor was in error in holding that as a matter of law the plaintiff was guilty of contributory negligence."

Restating to an extent the conditions existing and the circumstances under which the appellant drove his truck into the box car of the respondent while it was blocking a highway-railroad crossing: Appellant was thoroughly familiar with the crossing in question. For 600 feet as appellant approached the crossing, the highway was straight and level and there was no obstruction or interference of any kind; he was neither meeting nor passing a vehicle.

The weather conditions were good except for the darkness of the night. There were (1) a large fire on the west end of the freight car, which made it visible; (2) a burning flambeau in the center of the highway approximately 240 feet south of the freight car and crossing; (3) there were three men standing on the highway, one at the burning flambeau 240 feet from the crossing waving a white towel, one 80 or 90 feet from the crossing waving a flash light and the third man standing about 10 feet from the crossing waving a flash light. All three of them made every effort to stop appellant, one of them (the one standing about 80 or 90 feet from the crossing) having to dash off the highway to avoid being run over. Many other motorists were stopped or slowed down and safely passed around the end of the box car before appellant arrived.

It would seem impossible from the foregoing warnings, which were undoubtedly present and which the appellant had the opportunity of seeing if he had merely looked, to escape the conclusion that the appellant was guilty of gross negligence and willfullness as a matter of law. If he had exercised the slightest care for his safety, common sense and prudence would have dictated to him that danger was ahead, that he should slow the speed of his truck and get the same under control for any emergency, but this he failed to do.

Appellant's acts and conduct force us to but one conclusion, and that is that the only reasonable inference to be drawn from all the testimony is that if appellant had exercised the slightest degree of care for his own safety, he could have and would have seen the box car blocking the crossing in sufficient time to have avoided the collision therewith. His failure to do so, in our opinion, convicts him of contributory negligence as well as recklessness and willfullness. But even if the appellant were guilty of only contributory negligence, the jury having found that he was entitled to recover only actual damages, the trial Judge properly granted respondent's motion for a verdict *non obstante*

*veredicto. Taylor v. Atlantic Coast Line R. Co.,* 217 S. C. 435, 60 S. E. (2d) 889.

For the reasons above stated, the judgment of the lower Court is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.