0850

Daisy BROOM, Guardian ad Litem for Larry Broom, Respondent v. SOUTH-EASTERN HIGHWAY CONTRACTING COMPANY, INC., Appellant.

(352 S. E. (2d) 302)

Court of Appeals

*Robert E. Salane,* of *Barnes, Alford, Stork & Johnson,* Columbia, *for appellant.*

*J. Marvin Mullis, Jr.,* and *Carl N. Lundberg,* of *J. Marvin Mullis, Jr., P.A.,* Columbia, *for respondent.*

Heard Oct. 15, 1986.

Decided Dec. 29, 1986.

GOOLSBY, Judge:

This personal injury action arises out of an accident occurring on April 24, 1978, when Larry Broom was struck by a motor grader driven by an employee of Southeastern Highway Contracting Company, Inc. The questions on appeal

relate to the appointment of the guardian *ad litem*, the defenses of contributory negligence and recklessness and of assumption of risk, the doctrine of last clear chance, the admissibility of certain testimony given by an expert witness, the giving of a requested jury instruction, and the amount of the verdict.

Ballenger Construction Company subcontracted with Southeastern to grade an unopened portion of Interstate-77 north of Columbia. Broom, a mentally retarded former bag-boy and dishwasher, worked for Ballenger as a sweeper. On April 24, 1978, his first day at work, Broom suffered serious injuries after stepping in front of and being struck by a motor grader driven along a haul road by a Southeastern employee.

Nearly six years later, on April 2, 1984, Broom's mother, Daisy Broom, filed a petition to be appointed Broom's guardian *ad litem*. Suit commenced the following day with the service upon Southeastern of a summons and complaint. The complaint alleged Broom's damages, which resulted from his personal injuries, were proximately caused by the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Southeastern's agent, Charles Edward McGill, in his operation of the motor grader.

Southeastern answered the complaint on January 14, 1985, denying its material allegations. Its answer also set forth several affirmative defenses, among them contributory negligence and recklessness, assumption of risk, and the statute of limitations.

On January 25, 1985, the Clerk of Court signed an order granting Daisy Broom's petition to be appointed her son's guardian *ad litem*.

At the commencement of trial on January 28, 1985, Southeastern moved to dismiss the action, alleging Daisy Broom lacked capacity to sue as Broom's guardian *ad litem* because the clerk entered the order appointing her guardian *ad litem* without requiring her to make any showing of Broom's incompetency. The trial court denied the motion and the case proceeded to trial.

During the trial, the trial court denied Southeastern's motions for nonsuit and directed verdict. Thereafter, the jury returned a verdict against Southeastern and awarded

$500,000 in actual damages for Broom's personal injuries. Following the trial, the trial court denied Southeastern's motions for judgment notwithstanding the verdict, new trial, and new trial *nisi.* Southeastern appealed. We affirm.

## I.

Southeastern first contends that the trial court committed reversible error in denying its motion to dismiss made on the ground that the Clerk of Court "improperly and improvidently granted" Daisy Broom's petition to be appointed her son's guardian *ad litem.*

The sole basis for Southeastern's contention that the clerk's order was "improperly and improvidently granted" was its assertion that Daisy Broom did not make any showing of Broom's mental incompetency.

Southeastern, however, failed to include in the transcript of record either the proceedings upon its motion to dismiss or the trial court's order denying the motion. We know nothing, then, about the showing, if any, made by Southeastern in support of its motion or of the reasons given by the trial court in denying it. The trial court could have denied Southeastern's motion for any number of reasons, one of them being, of course, that sufficient proof of Broom's incompetency supported the guardian *ad litem's* appointment. *Cf. Thompson v. Moore,* 227 S. C. 417, 88 S. E. (2d) 354 (1955) (wherein the Supreme Court affirmed an order that vacated, on motion of the defendant, a prior order of appointment of a guardian *ad litem* for an allegedly mentally incompetent plaintiff because the proof was not reasonably sufficient to establish the fact of mental incompetency).

As the appellant, Southeastern had the burden of furnishing to us a sufficient record on which we can base our decision. *Germain v. Nichol,* 278 S. C. 508, 299 S. E. (2d) 335 (1983). Because Southeastern did not do this, we must assume the regularity of the proceedings below and the correctness of the ruling appealed from. 5 Am. Jur. (2d) *Appeal and Error* § 704 at 151 (1962). We therefore affirm the trial court's order denying Southeastern's motion to dismiss.

## II.

Southeastern next contends that the trial court erred in failing to grant its motions for nonsuit, directed verdict, and judgment notwithstanding the verdict.

### A.

Southeastern argues that its motion for judgment notwithstanding the verdict should have been granted because Broom conceded he was guilty of simple negligence and the jury returned a verdict in his favor for actual damages only, thereby exonerating it of any recklessness. Southeastern relies on *Taylor v. Bryant*, 274 S. C. 509, 265 S. E. (2d) 514 (1980), wherein the Supreme Court, citing *Field v. Gregory*, 230 S. C. 39, 94 S. E. (2d) 15 (1956), *Utsey v. Williams*, 229 S. C. 176, 92 S. E. (2d) 159 (1956), *Mozingo v. Atlantic Coast Line R.*, 220 S. C. 323, 67 S. E. (2d) 516 (1951), and *Taylor v. Atlantic Coast Line R.*, 217 S. C. 435, 60 S. E. (2d) 889 (1950), held that the trial judge should have granted the defendants' motion for judgment notwithstanding the verdict where the plaintiff was contributorily negligent as a matter of law and the jury found he was entitled to recover only actual damages because the effect of the jury's verdict was to absolve the defendants from the charges of recklessness and willfulness.

We believe, however, that *Jumper v. Goodwin*, 239 S. C. 508, 123 S. E. (2d) 857 (1962), dictates the result here, particularly since the facts in *Taylor v. Bryant, supra*, are completely different from the facts of this case. In *Jumper*, the Supreme Court explained that a court is not justified in inferring that the jury eliminated willfulness by finding only actual damages where the charge of the trial judge leaves the matter of punitive damages to the jury's discretion and there is no exception to his doing so.

In South Carolina, unlike most jurisdictions [22 Am. Jur. (2d) *Damages* § 240 n. 15 at 328 (1965)], the award of punitive damages does not rest in the discretion of the jury but is recoverable as a matter of right. *Id.* n. 20; *see Sample v. Gulf Refining Co.*, 183 S. C. 399, 410, 191 S. E. 209, 214 (1937) ("[W]hen under proper allegations a plaintiff proves a willful, wanton, reckless, or malicious violation of his rights, it is not only the right but the duty of the jury to award punitive damages.").

Even so, the jury in this instance was not instructed that it was required to award punitive damages if it found the defendant guilty of conduct that would support an award of punitive damages. Indeed, the trial judge, after instructing the jury that punitive damages "can be awarded only when the conduct of the defendant has been something more than merely negligent" and that "willfulness, wantonness, and recklessness will support the right to recover both actual and punitive damages," instructed the jury that it "could find and award actual damages without awarding punitive damages, depending upon [its] view of the evidence." The effect of the trial judge's charge regarding punitive damages was to leave their award completely to the jury's discretion.

Since Southeastern failed to except to the trial judge's charge regarding punitive damages on this ground, we hold that the jury's failure to award Broom punitive damages did not eliminate recklessness on Southeastern's part as a matter of law. Thus, the trial court was not required to grant Southeastern's motion for judgment notwithstanding the verdict.

## B.

Southeastern also argues that the trial court should have granted its motions for nonsuit, directed verdict, and judgment notwithstanding the verdict because the only reasonable inference to be drawn from the evidence is that, by stepping into the path of Southeastern's motor grader, Broom was contributorily negligent or reckless as a matter of law in causing his own injuries.

The question of contributory negligence or recklessness is ordinarily a question of fact for the jury. *Ballou v. Sigma Nu General Fraternity*, 291 S. C. 140, 352 S. E. (2d) 488 (Ct. App. 1986). The question rarely becomes a question of law for the court to determine. *Id.* In determining whether a plaintiff was guilty of contributory negligence or recklessness as a matter of law, the whole evidence must be viewed in the light most favorable to the plaintiff. *Griffin v. Griffin*, 282 S. C. 288, 318 S. E. (2d) 24 (Ct. App. 1984).

The record does contain, as Southeastern points out, evidence that the motor grader was being driven on the haul road, which was where it was supposed to travel, that Broom

had an unobstructed view of the oncoming motor grader, that the motor grader made a loud noise, and that Broom, according to his deposition, saw the motor grader before he stepped onto the haul road and watched it as he crossed the haul road.

But the record also contains evidence that McGill, the driver of Southeastern's motor grader, drove the motor grader into a congested area where he saw people gathered around a lunch wagon, that McGill drove the motor grader while standing up, which made braking more difficult, that McGill kept the hand throttle locked down at full speed as he approached the congested area, that McGill was looking off in another direction as he approached the congested area, that McGill knew the motor grader's brakes were defective, that McGill drove the motor grader at a speed that was too fast for the existing conditions, that, according to Roger K. Mahaffey, who witnessed the accident, Broom never looked to see if anything was coming before stepping out onto the haul road, and that McGill did not apply the motor grader's brakes prior to striking Broom. *See* 7A Am. Jur. (2d) *Automobiles and Highway Traffic* § 491 at 716 (1980) ("It has been held that the fact that a pedestrian comes into the path of a motorist suddenly and so close that the motorist cannot stop and avoid striking him does not excuse the motorist where he is driving at an unreasonable rate of speed under the circumstances.").

Where, as here, the inferences properly deductible from the evidence "tend to show both parties guilty of negligence or recklessness, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question must be submitted to the jury." *Cantrell v. Carruth*, 250 S. C. 415, 158 S. E. (2d) 208 (1967).

The trial court, therefore, committed no error in allowing the jury to determine the issue of whether Broom was contributorily negligent or reckless.

In so holding, we do not overlook Broom's concession at trial that he was guilty of simple negligence in stepping in front of the motor grader. All the same, the question of whether Southeastern's conduct was reckless, so as to permit Broom to recover for his injuries, was for the jury.

## C.

Southeastern further argues that the trial court should have granted its motions for nonsuit, directed verdict, and judgment notwithstanding the verdict because the only reasonable inference to be drawn from the evidence is that Broom voluntarily assumed the risk of injury by stepping onto the haul road and into the path of Southeastern's motor grader.

Like the defense of contributory negligence, the affirmative defense of assumption of risk ordinarily presents a question of fact for determination by the jury. *Cross v. Siddall*, 184 S. C. 508, 193 S. E. 124 (1937). Unlike contributory negligence, which is based on carelessness, inadvertence, and unintended events, "assumption of risk requires an intelligent and deliberate choice to assume a known risk." 7A Am. Jur. (2d) *Automobiles and Highway Traffic* § 425 at 641 (1980). The trial court may declare that the plaintiff assumed the risk as a matter of law where it clearly appears that the plaintiff freely and voluntarily exposed himself to a known danger and understood and appreciated the danger. *Litchfield Co. of South Carolina, Inc., v. Sur-Tech, Inc.*, 289 S. C. 247, 345 S. E. (2d) 765 (Ct. App. 1986).

We cannot say that the evidence here conclusively shows Broom assumed the risk of injury by stepping onto the haul road and into the path of the oncoming motor grader. There is evidence that reasonably suggests he never comprehended the dangerous condition that created the risk until after it was too late to avoid being injured. One witness to the accident testified, as we previously noted, that Broom never looked in the direction of the motor grader to see if anything was coming. At trial, Broom testified that he saw the motor grader coming but that he did not have time to move out of its way. This evidence, when viewed in the light most favorable to Broom, reasonably suggests that Broom did not know of the approach of the motor grader until after he stepped onto the haul road and it was too late for him to avoid being run over and injured. *See* 1 F. LEWIS AND P. KELLY, BLASHFIELD AUTOMOBILE LAW AND PRACTICE § 64.3 at 539 (3d ed. 1965) ("[I]f plaintiff was ignorant of the facts giving rise to the risk ..., he will not be held to have assumed the risk.").

We are aware that Broom's deposition testimony, which Southeastern published at trial, indicates Broom knew of the approach of the motor grader as he stepped onto the haul road; however, Broom's trial testimony makes no such admission. The questions of whether Broom first saw the motor grader before he stepped onto the haul road in time to avoid being run over or whether Broom first saw the motor grader after he stepped onto the haul road when it was too late to avoid being struck were, therefore, questions of fact for the jury to determine in deciding the issue of whether Broom assumed the risk of injury by stepping onto the haul road and into the path of the approaching motor grader.

### III.

Southeastern also contends that the trial judge erred in refusing to strike. from the complaint allegations that Southeastern's employee failed "to take advantage of any last clear chance to void striking [Broom] when [he] saw, or should have seen, Broom in the roadway" and in instructing the jury concerning the doctrine of last clear chance.

### A.

We first address Southeastern's argument that the evidence does not bring Broom's claim within the purview of the last clear chance doctrine and that the trial judge should have granted its motion to strike Broom's allegations of last clear chance.

An injured pedestrian who has been guilty of contributory negligence and invokes the last clear chance doctrine against the driver of a motor vehicle that struck and injured him must establish the following four elements:

(1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the en-

dangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him.

*Wade v. Jones Sausage Co.*, 239 N. C. 524, 525, 80 S. E. (2d) 150, 151 (1954); 1 F. LEWIS AND P. KELLY, BLASHFIELD AUTOMOBILE LAW AND PRACTICE § 65.1 at 543-44 (3d ed. 1965); *cf. Cooper V. Driggers*, 276 S. C. 299, 277 S. E. (2d) 893 (1981) (doctrine of last clear chance is inapplicable where the driver did not have an opportunity to avoid injury to the pedestrian); *Suber v. Smith*, 243 S. C. 458, 134 S. E. (2d) 404 (1964) (doctrine of last clear chance is inapplicable where injured person was physically able to escape from the peril at any time up to the the moment of impact).

When the evidence is interpreted in the light most favorable to Broom, it reveals this factual situation:

McGill drove Southeastern's motor grader toward an area along the haul road where a lunch wagon was parked and around which a number of people stood. On the way, McGill tested the motor grader's brakes and found they would stop the motor grader. As McGill approached the area of the lunch wagon, Broom stepped onto the haul road without having looked in the direction of the motor grader. At the moment Broom first realized the motor grader was bearing down on him, he was no longer able to avoid injury by moving out of its way. McGill saw Broom before hitting him but only when the motor grader, traveling at a speed of between 15 and 18 miles per hour, was 20 feet away from the lunch wagon. Since there was nothing to obscure McGill's view of the road ahead, McGill could have learned of Broom's peril soon had McGill not been looking off in another direction. Once McGill saw Broom, however, he neither applied the motor grader's brakes nor veered away from Broom in an attempt to avoid striking him; rather McGill came straight at Broom and ran over him. *Cf. Smith v. Spradlin*, 204 Va. 509, 132 S. E. (2d) 455 (1963) (a motorist who attempted to avoid striking a pedestrian whom the

motorist realized was in a position of peril was not liable under last clear chance doctrine absent a showing that the motorist should have seen and realized the pedestrian's perilous position sooner).

Although the question is admittedly a close one, we are of the view that the trial judge properly submitted the issue of last clear chance to the jury.

### B.

Southeastern's contention that the trial judge should not have instructed the jury concerning the doctrine of last clear chance lacks merit.

The issue of last clear chance was raised by the pleadings and, as we just noted, was supported by the evidence. *See Tucker v. Reynolds*, 268 S. C. 330, 335, 233 S. E. (2d) 402, 404 (1977) ("the court acts correctly when it charges the jury on the law framed by the issues as made by the pleadings and the facts developed by the evidence in support of those issues.") The trial judge, therefore, properly charged the doctrine.

Moreover, Southeastern never voiced an objection to the trial judge's instructing the jury on the doctrine of last clear chance, although its counsel did engage in a brief discussion with the trial judge regarding the doctrine. *See Johnson v. Williams*, 238 S. C. 623, 121 S. E. (2d) 223 (1961) (a failure to object to a charge when afforded an opportunity to do so rendered questions concerning it unavailable on appeal).

### IV.

Southeastern next contends that the trial court committed reversible error in allowing Broom's vocational rehabilitation expert, Timothy D. Bryson, to express his opinion regarding Broom's ability to secure employment and to hold a job.

Bryson gave two opinions, each one in response to a question directed to him by Broom's counsel. Southeastern objected to both questions.

### A.

The first question to which Southeastern objected was the following:

Based therefore on the work history you took from [Broom], your observations in your interview, the tests you gave him, the medical information from the reports and from hearing the doctors testify here in Court, watching him testify, do you have an opinion as to whether he is employable in a competitive labor market?

Southeastern's counsel objected to this question "because ... it is based on matters not in evidence."

The trial judge overruled the objection and Bryson then expressed the opinion that "Broom is not employable within the competitive labor market."

We need not consider Southeastern's contention regarding its objection to the first question because the objection was too general. "[An] objection must be specific enough to inform the trial court of the point being urged by the objector and to show the opposite party the point of the objection, so that he may have an opportunity to obviate the error, if possible." 88 C.J.S. *Trial* § 124 at 248-49 (1955). The objection made here fails in this regard; therefore, the trial judge committed no error in overruling the objection and in admitting the evidence. *See Chapman v. Foremost Dairies, Inc.,* 249 S. C. 438, 154 S. E. (2d) 845 (1967) (an objection to a hypothetical question was held to be improper where the objection asserted that the question contained matters not supported by the record and that it omitted matters that were of importance); *Kennedy v. Woods,* 131 Neb. 217, 220, 267 N. W. 390, 392 (1936) (that a hypothetical question assumes "a state of facts not in evidence" is a general objection); *Reynolds & Heitsman v. Henry,* 193 Iowa 164, 167, 185 N. W. 67, 68 (1921) (that a hypothetical question "assumes facts not shown by the record" is a general objection).

B.

The other question to which Southeastern objected was the following hypothetical question:

Let me ask you this. Let's assume that ... they've been encouraging him to try to work and they've been putting in applications and things like that. Let's assume that he lucks up and gets a job, that somebody happens to

hire him. In your opinion, what's going to happen in that situation.

Southeastern's counsel objected saying, "I'm not sure that's a question this gentleman can answer unless he's given more facts."

After the trial judge overruled the objection, Bryson answered the hypothetical question by expressing doubt that Broom "would be able to sustain employment for any reasonable length of time."

Once again, the trial judge committed no error in overruling the objection and in admitting the evidence. This objection also was too general. As the Supreme Court observed in *Chapman v. Foremost Dairies, Inc.*, 249 S. C. at 442, 154 S. E. (2d) at 850, " 'objections to hypothetical questions asked expert witnesses must be specific,' " and where the hypothetical question omits necessary facts, " 'the objection should point out what necessary facts were omitted. . . .' "

V.

Southeastern further contends the trial court committed reversible error in instructing the jury in accordance with one of Broom's requests to charge.

Before giving the jury his general instructions, the trial judge afforded counsel for Southeastern an opportunity to object to Broom's requests to charge. Southeastern's counsel objected to Broom's Requests Nos. 28 and 29 stating, "Your Honor, I'm not sure [No. 28] and [No. 29] concerning pain amounting to disability is a proper statement of the law and I would object to those." Counsel did not explain to the trial judge the specific problem or problems he had with these requests.

Although the trial judge indicated he would charge both requests, he only charged Request No. 28. This charge, as slightly modified by the trial judge, read, "I charge you that pain alone can be disabling if a person is unable to work except by being in pain." *See Bryant v. Harris*, 494 F. Supp. 932, 935 (D.S.C. 1980) ("It is well established that pain alone can be disabling within the Social Security Act.").

Southeastern argues that the requested instruction, as charged by the trial judge, was erroneous because, to quote the only exception Southeastern directed thereto, the

"charge improperly implies that pain alone to any degree renders one disabled from employment."

Southeastern, however, is in no position now to complain about the trial judge's giving of Broom's request to charge. Its objection that the request was not "a proper statement of law" without specifying why it was not so is too general to be considered. *See Abel of Arkansas, Inc., v. Richards,* 236 Ark. 281, 289, 365 S. W. (2d) 705, 710 (1963) (objection that an instruction "is not a correct declaration of the law" viewed as a general objection); *City of Dawson Springs v. Reddish,* 344 S. W. (2d) 826, 827 (Ky. Ct. App. 1961) (an objection to an instruction that it "did not correctly state the law with which it deals" regarded as too general); *Huffman v. Mills,* 131 W. Va. 218, 46 S. E. (2d) 787 (1948) (an objection that instructions to jury did not properly state law held insufficient). An objection should be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial judge. *Fleet Transport Co. v. Cooper,* 126 Ga. App. 360, 190 S. E. (2d) 629 (1972).

## VI.

Southeastern's last contention involves its assertion that the amount of the damages is excessive.

In the instant case, the evidence shows Broom sustained severe injuries when Southeastern's motor grader knocked him 50 feet and, after he hit the ground, rolled him under its blade. He suffered a fracture of the right orbit and cheek bone, a collapsed lung, a dislocated shoulder, and a fractured liver. The accident also left Broom with six fractured ribs and bleeding internally. His injuries required surgery and hospitalization. The orbital fracture necessitated a plastic implant. Broom now suffers from double vision, watering, and swelling of the right eye. He has a noticeable depression of the right cheek. Broom experiences pain in his abdomen, ribs, and lower back whenever he lifts or bends. His spine and left arm have each been permanently impaired five percent. Broom suffers post traumatic syndrome. He is unemployable in the competitive labor market. Broom's total medical, drug and hospital bills were approximately $7,500. The implant can become infected and will require removal if it does so.

The trial judge, who heard the evidence and was familiar with the atmosphere at trial, rejected Southeastern's challenge to the amount of the verdict. So do we. Although the damages awarded by the jury are generous, we cannot say, as appellate judges, that the damages are so grossly excessive that it would be a denial of justice to allow the verdict to stand. *Clark v. Ross*, 284 S. C. 543, 328 S. E. (2d) 91 (Ct. App. 1985); *cf. Gasque v. Heublein, Inc.* 281 S. C. 278, 315 S. E. (2d) 556 (Ct. App. 1984) (wherein the court let stand $750,000 in actual damages awarded for loss of an eye); *Martin v. Fleissner GMBH*, 741 F. (2d) 61 (4th Cir. 1984) (a $400,000 award of actual damages for the partial loss of a hand was not viewed as excessive by the court applying South Carolina law where the award was based on evidence of pain, suffering, disfigurement, medical expenses of $8,000, and lost earnings).

While Southeastern argues that reasons of caprice, passion or prejudice motivated the jury to award the amount that it did, Southeastern nowhere directs us to any trial event or to any item of evidence that might have induced the jury to act out of caprice, passion or prejudice. *Lucht v. Youngblood*, 266 S. C. 127, 221 S. E. (2d) 854 (1976).

For the reasons we have stated, the judgment below is

Affirmed.

BELL and CURETON, JJ., concur.