1615

Margaret S. HALLMAN, Appellant v. POINTE ARCADIA HORIZONTAL PROPERTY REGIME, INC., Respondent.

(402 S.E. (2d) 493)

Court of Appeals

*Keith M. Babcock* and *Frederick M. Zeigler,* both of *Lewis, Babcock, Pleicones & Hawkins,* Columbia, *for appellant.*

*Charles R. Norris* and *John E. Schmidt, III,* both of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for respondent.*

Heard Jan. 22, 1991.

Decided Feb. 25, 1991.

*Per Curiam:*

In this slip and fall case the appellant, Margaret S. Hallman, sued the respondent, Pointe Arcadia Horizontal Property Regime, Inc., for injuries she sustained when she fell on Regime property. The trial court granted summary judgment to the Regime on the grounds (1) the Regime had no duty to Hallman, (2) she was contributorily negligent, and (3) she assumed the risk. Hallman appeals. We affirm.

Hallman owns a condominium unit in Pointe Arcadia, a condominium complex near Columbia. The Regime owns the common elements of the complex. After a snow and ice storm in January, 1988, Hallman fell and broke her hip while she walked from her condominium to the clubhouse for the annual meeting of the Regime.[1]

---

[1] The Regime is composed of homeowners who have the right to vote on certain Regime business matters. The homeowners also elect officers who are responsible for the day to day management of the Regime's affairs.

The issues raised in this appeal are whether the trial court erred in granting summary judgment based upon the Regime's defenses of (1) contributory negligence, (2) assumption of the risk, and (3) its lack of a duty of care to Hallman.

The meeting of the condominium owners occurred the afternoon of January 10, 1988. In her deposition, Hallman testified the snow storm which occurred on January 7, 1988, was the worst she had seen since 1962. According to her, ice and snow covered the roads, sidewalks, and grassy areas in the complex. It is clear from Hallman's testimony she understood and appreciated the dangers in walking from her condominium to the clubhouse. Her testimony is replete with statements like "I was taking my life in my own hands" and "I did not know if I could make it another five feet without killing myself." Her fall occurred when she took a short cut through the tennis court and then onto a grassy area behind the clubhouse.

Hallman argues her knowledge of the dangers of walking on the ice was not contributory negligence or assumption of the risk because it was absolutely necessary for her to attend the homeowner's meeting. In other words, she argues that because there was a possibility the homeowners would increase the regime fee at the annual meeting, she had no choice but to encounter the known dangers of the storm and attend the meeting. She claims the Regime had a superior knowledge of the hazardous conditions and therefore had a duty to either clear a safe pathway to the meeting place or cancel the meeting. The trial judge did not specifically rule on either the issue of the Regime's duty to cancel the meeting or its duty to clear a pathway to the meeting house. No motions address these omissions.[2]

Assuming the Regime had a duty to either cancel the meeting or provide a safe pathway to it, we nevertheless hold Hallman is barred from recovery because she assumed the risk of her injuries. Like the defense of contributory negligence, the defense of assumption of the risk ordinarily presents a jury question. *Broom v. Southeastern Highway Contracting Co., Inc.*, 291 S.C. 93, 352 S.E. (2d) 302 (Ct. App. 1986). This court may, however, find Hallman assumed the risk of her injuries if the only reasonable inference to be

[2] The trial court did find the Regime had no duty to clear the area where Hallman fell. Several exceptions attack this finding.

drawn from the evidence is that she freely and voluntarily exposed herself to a known danger which she understood and appreciated. Here, Hallman admittedly knew of and appreciated the danger created by the presence of ice and snow on the ground. Thus, the central issue in this appeal focuses on the voluntariness of Hallman's actions. Of course, Hallman's acceptance of the risk of injury was not voluntary if the Regime's tortious conduct left her with no reasonable alternative course of conduct in order to avert injury to herself. *Wallace v. Owens-Illinois, Inc.,* — S.C. —, 389 S.E. (2d) 155 (Ct. App. 1989).

Hallman's argument that she was justified in assuming the risk of injury to protect her financial interests has never been considered by the appellate courts of this state. Other jurisdictions have considered it under characterizations such as economic necessity, economic coercion, and economic compulsion. For our purposes we label her argument "economic necessity." The argument generally arises in cases of employees accepting known risks for fear of losing their jobs. While the courts are by no means unanimous in their decisions, they have generally found the acceptance of such risks voluntary. *See Robert E. McKee, General Contractor, Inc. v. Patterson,* 153 Tex. 517, 271 S.W. (2d) 391 (1954); *Fore v. Vermeer Mfg. Co.,* 7 Ill. App. (3d) 346, 287 N.E. (2d) 526 (1972); *O'Neil v. Furr's Inc.,* 82 N.M. 793, 487 P. (2d) 495 (1971); but see *Hull v. Mass. Mut. Life Ins. Co.,* 142 Ga. App. 269, 235 S.E. (2d) 601 (1977).

Hallman relies on *Wallace v. Owens-Illinois* to buttress her claim that the Regime's negligence left her no reasonable alternative course of conduct but to attend the meeting in order to avert financial harm to herself. In *Wallace,* a bottle of soda produced by the defendant exploded and spilled on the plaintiff's kitchen floor. The plaintiff slipped and fell while attempting to clean up the spill. This court held the plaintiff did not assume the risk of injury because he had no reasonable alternative but to clean up the spill. *Wallace,* — S.C. at —, 389 S.E. (2d) at 159.

*Wallace* is not a financial necessity case and the facts of this case are clearly inapposite to those of *Wallace.* Here, the Regime's acts in failing to cancel the meeting or provide a safe pathway did not cause the slippery conditions as was the case

in *Wallace*. Second, Hallman could have, at the expense of not protecting her financial interests, chosen to remain at home and avoided injury to herself.[3] Finally, the trial judge found Hallman had available to her the reasonable alternatives of using a proxy to vote her interests at the meeting or driving her automobile to the meeting.[4] No exception addresses these findings. Because Hallman does not challenge these findings, they become the law of the case. *Connolly v. People's Life Insurance Company of South Carolina*, 299 S.C. 348, 384 S.E. (2d) 738 (1989).

Because we reject Hallman's claim of financial necessity, we are constrained to agree with the trial judge that Hallman assumed the risk of her injury as a matter of law. We need not address Hallman's other bases for appeal.

Accordingly, the order of the trial court is affirmed.

---

[3] Except for Hallman's assertion that regime fees were likely to have been discussed at the annual meeting, there is no other indication regime fees were in fact discussed at the meeting. In fact, the agenda for the meeting did not list regime fees as a topic for discussion.

[4] The proxy proved to be a viable alternative, inasmuch as Hallman had her neighbor vote her proxy after the fall.