953 F.2d 637
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Clarence BARNWELL, Plaintiff-Appellee,
v.
BARBER-COLMAN COMPANY, Defendant-Appellant.
 No. 91-1090.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1991.
Decided Jan. 15, 1992.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston, No. CA-85-1510-2-8, Solomon Blatt, Jr., Senior District Judge.
 Argued: James Linwood Sanderlin, McGuire, Woods, Battle & Boothe, Richmond, Va., for appellant; L. Sidney Connor, IV, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., for appellee.
 On Brief: Catherine C. Hammond, McGuire, Woods, Battle & Boothe, Richmond, Va., for appellant; Stephen G. Morrison, Nelson, Mullins, Riley & Scarborough, I.S. Leevy Johnson, Johnson, Toal, & Battiste, P.A., Columbia, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS and WILKINS, Circuit Judges, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises from a products liability action in which the jury awarded both compensatory and punitive damages. Defendant appeals issues which turn primarily on the award of punitive damages in addition to an issue concerning assumption of risk. There being no reversible error, we affirm.
 
 I.
 
 2
 Plaintiff Barnwell was employed as a warper at the Asten-Hill textile plant in Walterboro, South Carolina. He was injured in an accident when his hand was caught at a nip point between two rollers on a machine manufactured by defendant, Barber-Colman Company. Plaintiff was working with a pair of scissors near this point when the scissors were pulled into the machine along with his hand. Plaintiff lost two fingers and a joint of his dominant right hand. Plaintiff also lost approximately $10,000 in wages, and his medical expenses were about $29,000.
 
 
 3
 At trial, plaintiff elected to proceed solely on a strict liability theory. It was unclear at the time of trial whether South Carolina courts would allow the recovery of punitive damages in a strict liability action. The district court chose to allow the theory, and evidence regarding a prior, similar incident was admitted to show notice on defendant's part. Plaintiff's counsel argued this theory to the jury in closing, and, as part of his closing, offered information regarding defendant's net worth, $38 million. Plaintiff's counsel suggested that a percentage of that amount, perhaps 1%, 10%, or 50% might be an appropriate award. The jury returned a verdict for $1 million in compensatory and $2.8 million in punitive damages, a total of $3.8 million or 10% of defendant's net worth. Defendant thereafter filed a motion for JNOV or, in the alternative, a new trial.
 
 
 4
 Subsequently, the district court certified to the Supreme Court of South Carolina the question of whether punitive damages are recoverable in a strict liability action. That court answered the question in the negative. Barnwell v. Barber-Colman Co., 301 S.C. 534, 393 S.E.2d 162 (1989). The district court then held a hearing at which time it granted defendant's motion to strike the punitive damage award. The court denied the motion for JNOV but granted the motion for a new trial unless plaintiff should agree to remit $300,000 of the compensatory damage award. The district court reasoned that the jury had been unduly liberal in awarding $1 million. This appeal followed.
 
 II.
 
 5
 The primary issue before this Court concerns what negative impact evidence admitted in relation to the punitive damages issue may have had on the trial and the jury's damage award. Specifically, should the trial court have granted defendant's motion for a new trial? We believe that a new trial is not necessary. As noted above, evidence concerning a similar prior incident involving one of defendant's machines and an injury resulting therefrom as well as data showing defendant's net worth were presented on the issue of punitive damages. The trial court gave a limiting instruction that the items should only be used in connection with the jury's consideration of punitive damages and not for the determination of liability. Further, plaintiff's counsel sought to emphasize this evidence in closing argument.
 
 
 6
 This Court notes several precedents which bear on this issue. First, an appellate court "must assume that the jury followed the [trial] court's instructions." Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 604 (1985). See also Abney v. United States, 431 U.S. 651, 665 (1977) (it cannot be assumed that jury disregarded clear and unambiguous instructions). Further, the implicit quality of a closing argument may not be "so obvious or so serious [an error] that the public reputation and integrity of the judicial proceeding is impaired." Dennis v. General Electric Corp., 762 F.2d 365, 367 (4th Cir.1985) (citing United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239 (1940)). Finally, "[d]etermining whether the statements of defense counsel were properly drawn inferences from the facts in the record is fundamentally a matter of the trial court's discretion.... In reviewing such matters, this court must extend 'great deference [to] the superior vantage point of the trial judge....' " De Benedetto v. Goodyear Tire and Rubber Co., 754 F.2d 512, 519 (4th Cir.1985) (citing Arnold v. Eastern Air Lines, Inc., 681 F.2d 186 (4th Cir.1982), reh'g en banc, 712 F.2d 899 (1983), cert. denied, 464 U.S. 1040 (1984)).
 
 
 7
 Though it is frequently difficult to ascertain the precise process by which a jury may come to a decision regarding liability or an amount of damages, it is paramount that we maintain confidence in the jury's ability to follow instructions and reach a just conclusion. Because the trial court properly instructed the jury regarding this evidence, it must be assumed that the jury followed those instructions and reached a just conclusion absent some evidence of misconduct. There is no such evidence here. Further, the effect of counsel's closing argument on the jury is an observation that the district court is in the best position to make. It is not evident from the arguments presented to this Court that the proceeding was in some way impaired. Again, a new trial would be inappropriate.
 
 
 8
 Defense counsel is also concerned in this appeal with the fact that plaintiff's counsel alluded to the per diem method of damage calculation in his closing argument. Defense counsel objected to this argument, and the trial court responded that there was a way to make the argument which would comply with the law but offered no cautionary instruction to the jury. Plaintiff's counsel apparently cautioned the jury himself while making the argument that his closing was not to be considered as evidence and that it was made for illustrative purposes only.
 
 
 9
 It is the rule in this Circuit that the district court has the discretion to allow such an argument and should give a cautionary instruction to the jury regarding such an argument. Murphy v. National Railroad Passenger Corp., 547 F.2d 816 (4th Cir.1977). See also Mosser v. Fruehauf Corp., 940 F.2d 77 (4th Cir.1991) (where specific damages amounts for intangible losses are offered, court should specifically caution jury that such figures are not evidence). Further, an error, if harmless in nature, does not require reversal. The trial court's failure to give a cautionary instruction regarding the per diem method of damage calculation was error. However, this Court believes it to have been harmless error given that there is no indication that the jury relied on this method of calculation for its damage award. In addition, the amount of the award has been substantially reduced from the jury's original estimation thus obviating any effect plaintiff's closing argument may have had on the jury's deliberations.
 
 
 10
 In this same context, defendant complains that the amount of the compensatory damages award, ($700,000 after the $300,000 remittitur), is too high and was unduly influenced by the evidence of defendant's net worth. We disagree. Plaintiff has cited a number of cases in which damage awards for injuries similar to that involved here have been upheld by this and other courts. See Klein v. Sears Roebuck & Co., 773 F.2d 1421 (4th Cir.1985) ($633,000 for 80% loss of use of right hand); Saupitty v. Yazoo Manufacturing Co., 726 F.2d 657 (10th Cir.1984) ($560,000 for the loss of a thumb and two fingers); and Jenkins v. McLean Hotels, Inc., 859 F.2d 598 (8th Cir.1988) ($600,000 for lacerations of leg). Because the punitive award has been stricken and the compensatory award reduced, the amount of compensatory damages now seems appropriate.
 
 III.
 
 11
 Defendant moved in the court below for a ruling that, as a matter of law, plaintiff voluntarily assumed the risk by which he was injured. The trial court submitted the issue to the jury.
 
 
 12
 South Carolina law provides that the court may declare that the plaintiff assumed the risk as a matter of law "only if the sole reasonable inference to be drawn from the evidence is that the plaintiff freely and voluntarily exposed himself to a known danger which he understood and appreciated." Wallace v. Owens-Illinois Inc., 300 S.C. 518, 524, 389 S.E.2d 155, 158 (Ct.App.1989) (citing Broom v. Southeastern Contracting Co. Inc., 291 S.C. 93, 352 S.E.2d 302 (Ct.App.1986)).
 
 
 13
 In support of its position, defendant points to plaintiff's testimony that he was cutting tape near the point of danger so as to have the tape available for use after the drum had filled up and finished running. Plaintiff also testified that he could have cut tape elsewhere and that other workers now do cut tape elsewhere. Plaintiff responds by pointing out his testimony that his actions conformed to standard plant procedure and that he had to use the scissors in this fashion in order to maintain productivity.
 
 
 14
 Clearly, reasonable minds could differ as to whether Barnwell assumed the risk of his injury. There was danger present, but Barnwell testified that he was following standard procedure. The trial court handled the issue properly by submitting it to the jury.
 
 
 15
 For the reasons stated herein, the rulings and judgment of the district court are hereby
 
 
 16
 AFFIRMED.